**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Mark CARPENTER,**
**Defendant-Appellant.**

No. 84–1719
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Aug. 13, 1985.

Terrence McDonald, San Antonio, Tex., for defendant-appellant.

Mervyn Hamburg, Atty., Appellate Section, Dept. of Justice, Criminal Div., Washington, D.C., for plaintiff-appellee.

Before WILLIAMS, JOLLY, and HILL, Circuit Judges.

ROBERT MADDEN HILL, Circuit Judge:

Mark Carpenter appeals from his convictions on three counts of perjury before a grand jury in violation of 18 U.S.C. § 1623 contending that the evidence was insufficient to support his convictions and arguing two theories of conflict of interest by his defense counsel. Finding the evidence to be sufficient and no conflict of interest to have existed, we affirm.

## I. BACKGROUND

Mark Carpenter was charged in a four-count indictment with perjury before a grand jury in violation of 18 U.S.C. § 1623. After a jury trial, Carpenter was found guilty on Counts 1, 2, and 3 and not guilty on Count 4. The district court sentenced Carpenter to three years imprisonment on Count 1 and five years probation on Counts 2 and 3, to commence upon expiration of the sentence in Count 1. Carpenter appeals his convictions on grounds of insufficient evidence and conflict of interest by his attorney.

## II. ANALYSIS

### A. Insufficient Evidence

The standard of review for insufficiency of the evidence is set forth in *United States v. Bell,* 678 F.2d 547 (5th Cir.1982) (en banc), *aff'd,* 462 U.S. 356, 103 S.Ct. 2398, 76 L.Ed.2d 638 (1983) as follows:

It is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, provided a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt. A jury is free to choose among reasonable constructions of the evidence.

*Id.* at 549 (footnote omitted). The evidence and the inferences to be drawn from it are viewed in the light most favorable to the Government. *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); *United States v. Lorence,* 706 F.2d 512, 518 (5th Cir.1983). The standard

of review is the same whether the evidence used to support the conviction is direct or circumstantial. *United States v. Escobar,* 674 F.2d 469, 477 (5th Cir.1982).

■ To charge a defendant with perjury, an indictment must allege that:

the defendant made a false material statement before a court with knowledge of its falsity.... The test of materiality is whether the false testimony was capable of influencing the court on the issue before it.

*United States v. Oberski,* 734 F.2d 1034, 1035 (5th Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 797, 83 L.Ed.2d 790 (1985). The issue before the grand jury was an investigation of the smuggling of marijuana into the United States from Mexico. In Count 1, Carpenter was charged with lying to the grand jury when he denied that he had flown to Mexico as a pilot for Barry Hogan to transport a quantity of marijuana. His conviction on this count is based on his answer to the questions set forth in Count 1 as follows:

Q. All right. Tell us about Barry Hogan. Isn't it a fact that you were going to be paid $15,000 for the 400-pound load of marijuana you were going to bring out of Mexico?

A. No, sir, that's not true at all.

Q. Well, how much were you going to be paid?

A. I wasn't going to be paid anything to pick up anything.

Q. Why were you in Mexico?

A. I was on business for Barry Hogan.

Q. What type of business? What were you told to do?

A. I was told to go down to this strip in Concepcion del Oro and meet with—a guy would meet me on the strip there and I was to hand over some paperwork to him and that was all.

Q. And that was it?

A. That's it.

\* \* \* \* \* \*

Q. Did you fly to Mexico on the occasion of your arrest to pick up 400 pounds of marijuana?

A. No, sir.

Q. You know you can be prosecuted for perjury, for any false statements, made before this Grand Jury?

A. Yes, sir.

Q. And it's still your testimony you did not go down there to pick up a quantity of marijuana?

A. No, sir.

Q. It's your testimony Mr. Hogan did not hire you to pilot a quantity of marijuana?

A. No, sir.

Q. That is your testimony?

A. Yes, sir.

Q. Mr. Hogan did not hire you to pilot a quantity of marijuana?

A. No, sir.

\* \* \* \* \* \*

Q. It's your testimony when you were arrested in Mexico and that is in the year 1979, correct?

A. Yes, sir.

Q. You did not travel to Mexico for the purpose of transporting a quantity of marijuana from Mexico to Texas?

A. No, sir.

Q. You never planned to transport marijuana for Barry Hogan?

A. No, sir.

As to Count 1, Carpenter contends that his answers before the grand jury were literally correct and true. He further argues that the majority of the questions set forth in the indictment are imprecise and lack the specificity required to prove perjury, relying on *Bronston v. United States,* 409 U.S. 352, 93 S.Ct. 595, 34 L.Ed.2d 568 (1973) for the proposition that "[t]he burden is on the questioner to pin the witness down to the specific object of the questioner's inquiry." *Id.* at 360, 93 S.Ct. at 601. Carpenter contends that in order to sustain a conviction, the record must reflect that he was paid $15,000 for a 400-pound load of

marijuana which was to be flown out of Mexico. He asserts that the evidence in the record either indicates that he was to fly to Mexico to pick up as much marijuana as he could get for $15,000 or that he was supposed to receive only $10,000 for transporting marijuana across the river. Carpenter ignores his most damaging testimony before the grand jury, in which to the question "Well, how much were you going to be paid?," he replied, "I wasn't going to be paid anything to pick up anything."

■ The testimony of Richmond Harper and DEA agents Herrera and White and Carpenter's tape recorded confession establish the falsity of Carpenter's answers to the questions asked before the grand jury. *See United States v. Lane,* 735 F.2d 799, 808–09 (5th Cir.1984), *cert. granted,* —— U.S. ——, 105 S.Ct. 1167, 84 L.Ed.2d 318 (1985) (certiorari granted solely on the issue of misjoinder).

In his taped confession Carpenter stated that:

> About two months ago, me, Barry Hogan and Richmond Harper met in San Antonio with a man named Arturo and discussed the possibility of picking up a load of marijuana in Mexico and bring [sic] it back to the States under the Auspices [sic] of selling it. Hogan was going to sell the pot and I'd be paid for transportation.

Later on the tape, Carpenter admitted that the "objective of going to this [clandestine air]strip [in Zacatecas, Mexico] was to land [the airplane] and pick up as much marijuana as [he] could get for [his] $15,000." He confessed that he was to pick up about 600 pounds of marijuana in Mexico and fly it back to a private airstrip in Lockhart, Texas; that Barry Hogan told him to do this; and that he "was supposed to get $10,000 for transporting the marijuana across the river."

The Government only has to prove that one of the questions set out in Count 1 was answered perjuriously. *See United States v. Caucci,* 635 F.2d 441, 444 (5th Cir.), *cert. denied,* 454 U.S. 831, 102 S.Ct. 128, 70 L.Ed.2d 108 (1981). Taken in context, Car-

penter's statement that he wasn't going to be paid anything to pick up anything was untrue. Carpenter was sufficiently pinned down by the questioning in this case. *See Bronston,* 409 U.S. at 360, 93 S.Ct. at 601. *Caucci,* 635 F.2d at 445. A reasonable trier of fact could have found that the evidence established guilt beyond a reasonable doubt.

In Count 2, Carpenter was charged with falsely testifying that he had not met with Arturo Mary and had not discussed marijuana importation with him. That count lists the relevant questions and answers as follows:

> Q. Did you ever have any meetings with Arturo Mary where you discussed marijuana and flying marijuana?
> A. No, sir.
>
> \* \* \* \* \* \*
>
> Q. You never discussed such marijuana transportation with Arturo Mary?
> A. No, sir.

In Count 3, Carpenter is charged with giving false testimony when he denied that he had ever discussed marijuana transportation with Richmond Harper. The relevant question and answer are:

> Q. You never discussed such marijuana transportation with Richmond Harper, Sr.?
> A. No, sir.

Carpenter argues that the testimony offered by the Government to support his convictions on Counts 2 and 3 merely shows that he was present during discussions about marijuana, not that he ever actually discussed marijuana with either Arturo Mary or Richmond Harper. However, Carpenter relies on only part of the testimony presented during the trial, ignoring his taped confession. In the taped confession Carpenter stated that two months before his arrest in Mexico, he met with Richmond Harper, Barry Hogan, and Arturo Mary "and discussed the possibility of picking up a load of marijuana in Mexico and bring[ing] it back to the States under

the [a]uspices of selling it." On redirect examination, Harper clearly acknowledged that Carpenter was present and privy to the marijuana planning discussions. The taped confession supports Harper's testimony that Carpenter was privy to the discussions with Mary and Harper concerning the transportation of marijuana. The evidence was sufficient to support the jury's verdict on Counts 2 and 3.

## B. Conflict of Interest

Carpenter also contends that the district court failed to properly admonish him as to the possible conflict of interest created by his defense counsel's prior involvement in the case while employed as an assistant district attorney and by the payment of his defense counsel by the individual, Barry Hogan, convicted of the offense about which the government alleges the defendant committed perjury. Carpenter contends that he did not knowingly waive his right to conflict-free counsel. He argues that any waiver by him was not knowing and voluntary because the district court failed to properly admonish him about the conflict-of-interest issue. He asserts that "there is an affirmative duty upon the Court to advise a defendant of the nature of conflicts of interest." Carpenter relies on two cases for this argument: *United States v. Garcia*, 517 F.2d 272 (5th Cir. 1975) and *United States v. Alvarez*, 580 F.2d 1251 (5th Cir.1978). In *Garcia*, this Court held that in a criminal case, the district court should actively participate in a decision to waive a conflict of interest by defense counsel. *Id.* at 277. This Court

> instruct[ed] the district court to follow a procedure akin to that promulgated in F.R.Crim.P. 11 whereby the defendant's voluntariness and knowledge of the consequences of a guilty plea will be manifest on the face of the record.... As in Rule 11 procedures, the district court should address each defendant personally and forthrightly advise him of the potential dangers of representation by counsel with a conflict of interest. The defendant must be at liberty to question the district court as to the nature and consequences of his legal representation.

> Most significantly, the court should seek to elicit a narrative response from each defendant that he has been advised of his right to effective representation, that he understands the details of his attorney's possible conflict of interest and the potential perils of such a conflict, that he has discussed the matter with his attorney or if he wishes with outside counsel, and that he voluntarily waives his Sixth Amendment protections.... It is, of course, vital that the waiver be established by "clear, unequivocal, and unambiguous language." ... Mere assent in response to a series of questions from the bench may in some circumstances constitute an adequate waiver, but the court should nonetheless endeavor to have each defendant personally articulate in detail his intent to forego this significant constitutional protection.

*Id.* at 278 (citations omitted). *See Alvarez*, 580 F.2d at 1260 (summarizing *Garcia*).

Carpenter contends first that his defense counsel operated under a conflict of interest because of his role as an assistant district attorney in negotiating a plea agreement with the government and a prosecution witness, Boyce Rummel. Pursuant to a plea agreement, capital murder charges against Rummel in a state court were dismissed in return for the entry of a guilty plea in federal court and a specific sentence. Rummel was involved in Count 4 of the indictment in which Carpenter was charged with false testimony about his association with Rummel. The purpose of Rummel's testimony was to provide the evidence required to convict Carpenter on Count 4. The jury, however, acquitted Carpenter on Count 4. Thus, there was no prejudice resulting from the alleged conflict. Moreover, counsel vigorously cross-examined Rummel, bringing out the plea agreement with Rummel and Rummel's direct involvement with marijuana.

 Under the Sixth Amendment, where there exists a constitutional right to counsel, there likewise exists a correlative right to representation that is free from

any conflict of interest. *Wood v. Georgia,* 450 U.S. 261, 271, 101 S.Ct. 1097, 1103, 67 L.Ed.2d 220 (1981). A conflict exists when defense counsel places himself in a position conducive to divided loyalties. *See Mitchell v. Maggio,* 679 F.2d 77, 79 (5th Cir.), *cert. denied,* 459 U.S. 912, 103 S.Ct. 222, 74 L.Ed.2d 176 (1982). In this case there was no conflict.

Carpenter, however, argues that the district court should have conducted a hearing similar to that conducted under Fed.R. Crim.P. 11 for determining whether a guilty plea is knowing and voluntary, relying on *Garcia* and *Alvarez.* The necessity for such a hearing is triggered only by an actual conflict of interest. *See United States v. Medel,* 592 F.2d 1305, 1310 (5th Cir.1979). In this case there is nothing in the record which should have alerted the district court as to the existence of such a conflict.

Carpenter also contends that the district court erred in not properly admonishing him on the possible conflict of interest created by the payment of his defense counsel by the individual convicted of the offense about which the Government alleges the defendant committed perjury. Carpenter argues that under *Wood v. Georgia* his conviction should be reversed because he was indicted for perjury concerning his involvement with Barry Hogan who had agreed to pay Carpenter's attorney's fees not only for the trial of the case but also for the grand jury proceedings.

In *Wood v. Georgia,* the interests of the defendants themselves may have been sacrificed by their defense counsel for the interest of the employer who had retained the defense counsel and the potential for injustice was sufficiently serious to impose a duty on the court to inquire further. 450 U.S. at 270–72, 101 S.Ct. at 1103. Unlike *Wood v. Georgia,* in this appeal Carpenter fails to allege any strategy which defense counsel used or failed to use because Barry Hogan had agreed to pay the legal fees. The record shows that Carpenter asserted his claims of innocence and coerced confessions while still a prisoner in Mexico.

There is nothing in the record to indicate that defense counsel had Barry Hogan's interest in mind either at the time of Carpenter's grand jury appearance or at trial. By the time of Carpenter's perjury trial, Barry Hogan had already been tried and convicted of drug trafficking. Accordingly, any trial strategy which defense counsel might have used would not have helped Hogan's defense. Carpenter's brief cites nothing that could be construed as a trial tactic used by his defense counsel to assist Hogan and not Carpenter.

There is no requirement that such a hearing be held simply because the cost of a defendant's legal fees have been assumed by another person and that person is an alleged participant (at the time of grand jury proceedings) or convicted felon (at time of trial) in the same or related criminal activity as the defendant. In drug cases, it is not uncommon for a third party to pay the legal fees of the defendants. *See, e.g., In re Grand Jury Proceedings,* 680 F.2d 1026, 1027–28 (5th Cir.1982) (en banc). A conflict of interest does not automatically arise from such arrangements.

For these reasons the judgment of conviction is AFFIRMED.