Leo Gregory **NEALY,**
Petitioner-Appellee,

v.

Donald A. **CABANA,** Superintendent,
State of Mississippi Department of Corrections, et al., Respondents-Appellants.

No. 85–4304.

United States Court of Appeals,
Fifth Circuit.

Feb. 24, 1986.

Edwin Lloyd Pittman, Atty. Gen., Donald G. Barlow, Asst. Atty. Gen., Jackson, Miss., for respondents-appellants.

Timothy Holeman, court appointed, Gulfport, Miss., for petitioner-appellee.

Before THORNBERRY, ALVIN B. RUBIN and E. GRADY JOLLY, Circuit Judges.

## OPINION

ALVIN B. RUBIN, Circuit Judge:

Retained counsel who represented Leo Nealy, a defendant accused of a state crime, also represented the defendant's brother, Michael Nealy, who was to be

tried separately for the same crime. Although the testimony of Michael Nealy might have assisted the defendant, counsel refused to call Michael as a witness, at least in part because his testimony at Leo's trial would have prejudiced Michael when his case was later tried. Convicted in a state court, Leo now seeks habeas corpus on the ground that his counsel had an actual conflict of interest. Finding his claim meritorious, the district court granted habeas corpus. We conclude that the evidence amply supports the district court's judgment granting petitioner relief. Leo proved that an actual conflict adversely affected his counsel's performance. Contrary to the state's argument, it is not necessary for the petitioner to establish that the result of the proceeding would probably have been different had counsel not had a conflict of interest. We therefore affirm.

## I.

Leo Gregory Nealy entered the West Side Drug Store in Picayune, Mississippi, and asked a clerk for cough medicine. Shortly thereafter, two other men, at least one of whom was armed, entered the store and proceeded to rob it of drugs and money. During the robbery Nealy started to leave, but one of the robbers told him not to go. Despite this, Nealy left when the robbers were busy elsewhere in the store.

After the robbery, the police obtained the license number of the car used by the robbers. It was registered to James Michael Boyd of Slidell, Louisiana. The police subsequently obtained a warrant to search Boyd's residence in Slidell. At the time of the search, Boyd's brother was present, together with Nealy's brother, James Michael Nealy [Michael] and an unknown individual. The police discovered several incriminating items in the house, including the stolen drugs.

Both Nealys and Boyd were indicted in Mississippi state court for the robbery. Leo Nealy went to trial before Michael as the result of a severance and a continuance of Michael's trial. Both Nealys were represented by Lawrence Arrington. At Leo Nealy's trial, a police officer testified that Michael had told him that Leo lived at Boyd's residence, where the incriminating items were found. Arrington presented no evidence on Leo Nealy's behalf and persuaded Michael Nealy not to take the stand. At no time did Arrington or the trial judge discuss with Leo Nealy the possibility that Arrington might have a conflict of interest. Leo Nealy was convicted and sentenced to twenty years in prison.

Following exhaustion of his state remedies, Leo Nealy sought habeas corpus in federal court, contending that Arrington rendered him ineffective assistance because he refused to call Michael as a witness for the defense. At the magistrate's hearing, Arrington testified that his understanding, as a result of talking to both Nealys, had been that Leo Nealy did not live at the residence in question at the time of the robbery. He also testified that Michael Nealy had denied talking to the police officer. Arrington stated that he did not call Michael to the stand because he did not want to jeopardize Michael's case and because he believed that the state on cross-examination would have elicited testimony damaging to Leo Nealy.

After reviewing the state's objections, the district court adopted the magistrate's recommendations and granted the petition, subject to the state's right to appeal or to retry. The court found that Nealy's lawyer, Lawrence Arrington, had an "actual conflict of interest," relying on *Baty v. Balkcom.*[1] The conflict resulted from Arrington's concurrent and active representation of Michael, who was to be tried separately, and from Arrington's strategy: (1) he did not want to jeopardize Michael's

---

1. 661 F.2d 391 (5th Cir.1981) (Johnson, J.), *cert. denied,* 456 U.S. 1011, 102 S.Ct. 2307, 73 L.Ed.2d 1308 (1982).

case and (2) he believed that the state on cross-examination would have elicited testimony extremely damaging to Leo Nealy.

## II.

To succeed on a claim of conflict of interest, a habeas applicant must show that, as the Supreme Court held in *Cuyler v. Sullivan*[2] and reaffirmed in *Strickland v. Washington*,[3] "an actual conflict of interest adversely affected his lawyer's performance."[4] An actual conflict exists "whenever one defendant stands to gain significantly by counsel adducing probative evidence or advancing plausible arguments that are damaging to [the cause of] a codefendant whom counsel is also representing."[5] The district court found that Arrington had an actual conflict because Leo Nealy stood to benefit from Michael's testimony while Michael's case would have been jeopardized had he taken the stand. The state on appeal does not contest this determination. It argues instead that Leo Nealy did not prove that Arrington's conflicting loyalty adversely affected his performance. Nealy, on the other hand, asserts that, under our pre-*Strickland* decision in *Baty v. Balkcom*,[6] he need not prove adverse effect, contending that the *Cuyler* requirement of adverse effect is met if the habeas petitioner shows simply (1) an actual conflict of interest and (2) counsel's active representation of petitioner.[7]

## III.

In *Baty v. Balkcom*, this circuit held that *Cuyler* does not require "proof of adverse effect of a conflict of interest on counsel, in addition to proof of an actual conflict."[8] Under *Baty's* reading of *Cuyler*, a petitioner is entitled to relief if he establishes his counsel's actual conflict and active representation.[9]

Thereafter, in *Strickland v. Washington*, the Court in dicta distinguished three situations in which prejudice is prerequisite to setting aside a judgment of conviction. If counsel is denied an accused or if the state interferes with counsel's assistance, prejudice is presumed. "Prejudice in these circumstances is so likely that case by case inquiry into prejudice is not worth the cost."[10] On the other hand, if the accused contends his counsel was ineffective, he must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[11] An intermediate standard of prejudice is applied when counsel is burdened by an actual conflict of interest—a fairly rigid rule of presumed prejudice, but not a per se rule. The Court, quoting its prior opinion in *Cuyler*, stated: "Prejudice is presumed only if the defendant demonstrates that counsel 'actively represented conflicting interests' and 'that an actual conflict of interest *adversely affected* his performance.' "[12]

■ *Strickland* and recent cases in this

---

**2.** 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980).

**3.** 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

**4.** *Cuyler*, 446 U.S. at 348, 100 S.Ct. at 1719, 64 L.Ed.2d at 346.

**5.** *United States v. Carr*, 740 F.2d 339, 348 (5th Cir.1984), *cert. denied*, — U.S. —, 105 S.Ct. 1865, 85 L.Ed.2d 159 (1985) (quoting *Foxworth v. Wainwright*, 516 F.2d 1072, 1076 (5th Cir. 1975)).

**6.** 661 F.2d 391 (5th Cir.1981) (Johnson, J.), *cert. denied*, 456 U.S. 1011, 102 S.Ct. 2307, 73 L.Ed.2d 1308 (1982).

**7.** *Id.* at 397; *see also Barham v. United States*, 724 F.2d 1529, 1531 (11th Cir.1984); *Mitchell v.*

*Maggio*, 679 F.2d 77, 79 (5th Cir.), *cert. denied*, 459 U.S. 912, 103 S.Ct. 222, 74 L.Ed.2d 176 (1982).

**8.** *Baty*, 661 F.2d at 397 n. 13.

**9.** *Id.* at 397.

**10.** *Strickland*, 466 U.S. at —, 104 S.Ct. at 2067, 80 L.Ed.2d at 696.

**11.** *Id.* at —, 104 S.Ct. at 2068, 80 L.Ed.2d at 697.

**12.** *Id.* at —, 104 S.Ct. at 2067, 80 L.Ed.2d at 696 (quoting *Cuyler*, 446 U.S. at 350, 348, 100 S.Ct. at 1719, 1718 (footnote omitted) (emphasis added)).

circuit [13] and in the Eleventh Circuit [14] cast doubt on *Baty's* articulation of the level of proof required before prejudice will be presumed in these attorney conflict of interest cases. In practice, these "different" standards may not occasion different results.[15] Nonetheless, we hold that proof of some adverse effect is required before prejudice will be presumed from a showing that the attorney had an actual conflict of interest. Such adverse effect, however, has been shown in this case.

Adverse effect is not the equivalent of prejudice, the reasonable probability of a different result, as the term "prejudice" is defined in *Strickland*.[16] Injury sufficient to justify reversal is presumed from the showing of adverse effect. The state may be correct in arguing: "Simply put, the fact that James Michael Nealy was not allowed to testify did not in and of itself *change the outcome of the trial.*" (Emphasis added.) Whether "the outcome of the trial" was affected, however, is not the test. As the Court made clear in *Cuyler,* "[A] defendant who shows that a conflict of interest actually affected the adequacy of his representation need not demonstrate prejudice in order to obtain relief." [17]

Sufficient prejudice is presumed from any adverse effect because, as the Court said in *Strickland,* "it is difficult to measure the precise effect on the defense of representation corrupted by conflicting interests." [18] A defendant is "entitled to an attorney who [can] make a decision to use or not to use [testimony] unfettered by the effect of that decision on his other client's case." [19]

■ Nealy's attorney was not so unrestrained. The district court found, with ample support in the record, that Arrington was unable to decide whether to call Michael Nealy at Leo Nealy's trial without being concerned over what effect such an action would have on Michael's case. The state, however, emphasizes Arrington's testimony that he did not call Michael as a witness on Leo's behalf because he believed that Michael's testimony on cross-examination would result in Leo's conviction. The argument goes that, even if Arrington had not been representing both brothers, he would not have called Michael to testify. But a showing of adverse effect does not involve a "but for" inquiry. In *Baty,* the court was presented with a similar situation. The defendant's attorney had testified that he did not want the defendant to take the stand because he "didn't think [the defendants] could do anything but indict each other." [20] The *Baty* court found the concern evident in the attorney's statement to be "precisely the kind of consideration and the adverse effect feared in situations with conflicting interests." [21] We agree. Leo Nealy established that his counsel's conflicting interests adversely affected his active representation of and duty of loyalty to Leo. The district court so found and we

---

**13.** *See United States v. Carr,* 740 F.2d 339, 348 (5th Cir.1984); *United States v. Benavidez,* 664 F.2d 1255, 1259 & n. 3 (5th Cir.), *cert. denied,* 457 U.S. 1135, 102 S.Ct. 2963, 73 L.Ed.2d 1352 (1982).

**14.** *See Stevenson v. Newsome,* 774 F.2d 1558, 1562 (11th Cir.1985); *Ruffin v. Kemp,* 767 F.2d 748, 751 & n. 6 (11th Cir.1985); *Burger v. Kemp,* 753 F.2d 930, 942 (11th Cir.1985) (Johnson, J., dissenting).

**15.** *See Baty,* 661 F.2d at 397 n. 13 & at 398 (Fay, J., specially concurring).

**16.** 466 U.S. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 697 (1984) (showing of prejudice equals showing of "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different").

**17.** *Cuyler,* 446 U.S. at 349–50, 100 S.Ct. at 1719, 64 L.Ed.2d at 347; *accord Strickland,* 466 U.S. at 692, 104 S.Ct. at 2067, 80 L.Ed.2d at 696.

**18.** 466 U.S. at 692, 104 S.Ct. at 2067, 80 L.Ed.2d at 696; *see also Baty,* 661 F.2d at 396 (quoting *Holloway v. Arkansas,* 435 U.S. 475, 490–91, 98 S.Ct. 1173, 1181–82, 55 L.Ed.2d 426 (1978).

**19.** *Turnquest v. Wainwright,* 651 F.2d 331, 334 (5th Cir.1981); *see also Ruffin v. Kemp,* 767 F.2d 748, 751–52 (11th Cir.1985).

**20.** *Baty,* 661 F.2d at 397 n. 13.

**21.** *Id.*

do not find its determination clearly erroneous.

The state argues that it was unable to develop its case fully at the evidentiary hearing because Arrington's invocation of the attorney-client privilege prevented it from eliciting testimony about the information he learned from Michael that would have incriminated Leo. It also complains that, although the magistrate stated that he gave no weight to Michael's affidavit and relied instead on Arrington's testimony, the magistrate accepted an affidavit made out by Michael who thereafter escaped from prison preventing the state from propounding interrogatories to him.

The argument is plausible, but it proves on analysis to be irrelevant. Whether Michael would or would not ultimately have incriminated Leo, as Arrington testified, is not the issue. The lawyer who represented both was torn in his loyalty and unable to make a decision purely in the interest of one client to whom he owed undivided allegiance.

For these reasons, the judgment is AFFIRMED.