**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Gustavo OLIVARES and Hector Olivares, Defendants-Appellants.**

**No. 85–2292.**

United States Court of Appeals, Fifth Circuit.

April 4, 1986.

Opinion on Denial of Rehearing and Rehearing En Banc June 6, 1986.

---

Marjorie A. Meyers, Asst., Roland E. Dahlin, II, Federal Public Defender, Juan E. Gavito, Asst., Houston, Tex., for Gustavo Olivares.

E. Daniel Ramirez, Jr. (court appointed), Israel Ramon, Jr., (court appointed), Edinburg, Tex., for Hector Olivares.

Mervyn Hamburg, Washington, D.C., Henry K. Oncken, U.S. Atty., Robert L. Guerra, Asst., James R. Gough, Asst. U.S. Atty., Houston, Tex., for plaintiff-appellee.

Before BROWN, REAVLEY, and HILL, Circuit Judges.

JOHN R. BROWN, Circuit Judge:

In this appeal,[1] Gustavo Olivares and his brother, Hector Olivares, challenge the convictions primarily on two grounds. First, they claim that their attorney was operating under a conflict of interest which adversely affected his performance and that they were thereby deprived of effective assistance of counsel in violation of the Sixth Amendment. Second, both appel-

---

1. This appeal arises out of the same facts as *United States v. Colunga,* 786 F.2d 655, which we also decide today.

lants also claim that their convictions on four counts of conspiracy violate the double jeopardy clause because the evidence establishes the existence of just a single conspiracy. Hector Olivares also raises a sufficiency of the evidence challenge.

We find no merit in either the conflict of interest issue or the sufficiency of the evidence challenge. We do, however, hold that the multiple conspiracy convictions violate the Double Jeopardy Clause. We therefore vacate the sentences in all the conspiracy counts and remand with instructions that the convictions on all but one of the counts are to be reversed and those counts dismissed. The conviction on the remaining count is to be affirmed and both defendants are then to be resentenced on the remaining conspiracy conviction.[2]

### PCP[3]—Easy as One, Two, Three

In an eleven count indictment naming appellants and others, Dr. Gustavo Olivares and his brother, Hector Olivares, were charged with six counts of violating federal narcotics laws. Specifically, the appellants were charged with:

(1) conspiracy to manufacture PCP (count two);

(2) conspiracy to possess, with intent to distribute, PCP (count three);

(3) conspiracy to manufacture PCC, an immediate chemical precursor to PCP (count four);

(4) conspiracy to possess PCC with intent to manufacture PCP (count five);

(5) manufacturing approximately fifty pounds of PCC (count six); and

(6) possession of approximately fifty pounds of PCC with the intent to manufacture PCP (count seven).

The evidence at trial showed that in June, 1984, Roberto Colunga and Dr. Gustavo Olivares discussed the possibility of manufacturing PCP using a formula purchased by Colunga. Gustavo agreed to participate in the venture and split the profits 50–50 with Colunga. Gustavo agreed to furnish the expertise and knowledge of chemistry and Colunga agreed to purchase the necessary chemicals and lab site. Colunga subsequently acquired a residence at 5079 E. Fourteenth Street in Brownsville to be used as a lab site.

In August, 1984, Colunga received a telephone call from Gustavo who indicated a need for assistance and suggested that his brother, Hector, could be taught the chemical process. Hector Olivares was subsequently hired to aid in the manufacture of the PCP and perform other chores at the lab site, including washing the glassware used in the process and building a screen sifter in order to turn the final product into powder. Gustavo translated the PCP formula into Spanish so Hector could understand it. At about this same time, Colunga ordered certain chemicals needed to manufacture PCP and had them shipped to a freight-forwarding company in Brownsville.

Gustavo, Hector, and Colunga set the lab up in the garage of the newly acquired residence. They took certain precautions to prevent discovery. They placed sheets over the garage windows to prevent observation from outside. Colunga substituted "methylaniline" for "piperidine" in the written PCP formula in case the formula should fall into the wrong hands. The three also concocted a story in the event of their apprehension—they agreed to say that they were unwitting pawns of a fictitious third person and at all times believed they were making an insecticide.

Most of the preceding testimony was given at trial by Colunga, who was granted a severance in order to be tried separately. Subsequent to testifying against the Olivares brothers, and implicating himself in the process, Colunga pleaded guilty to two counts of the indictment in exchange for the dismissal of the remaining counts. At an early stage of the case, before deciding to plead guilty and testify against his co-defendants, Colunga had retained the same attorney as the Olivares brothers—Fred Galindo. Colunga also paid Galindo a portion of the Olivares brothers' attorney's fees. By the time of the trial, however,

---

**2.** This is the same result we reached today in the companion case of *United States v. Colunga,* 786 F.2d 655.

**3.** PCP stands for phencyclidine, a dangerous drug more commonly known by its street name—angel dust. The other drug involved in this case is PCC, or piperidinocyclohexanecarbonitrile. PCC is the immediate chemicab precursor to PCP. In other words, if someone sets out to manufacture PCP from scratch, he will have to make PCC first. For obvious reasons, we will hereinafter refer to the drugs by their acronyms.

Galindo was no longer representing Colunga and had long ago stopped receiving any fee payments from Colunga. Galindo, actively representing Hector and Gustavo, thoroughly cross-examined Colunga at trial and Colunga admitted that he had lied to Galindo repeatedly during the course of their attorney-client relationship.

Drug Enforcement Administration (DEA) agents provided additional significant testimony at the trial. Agents testified that they observed Hector and Gustavo load drums of chemicals onto a truck at the Intercat Freight Forwarding Company in Brownsville. They also observed the transportation of the chemicals to the residence at 5079 E. Fourteenth Street (the lab site). On October 13, 1984, a number of agents conducted a search at the lab site pursuant to a search warrant. The agents found a complete laboratory, a large amount of laboratory equipment, and a large table covered with white powder. About 50 pounds of this powder was confiscated. A forensic chemist for the DEA later tested the powder and determined that it was PCC, the immediate chemical precursor of PCP. The chemist further testified that all the chemicals needed to transform PCC into PCP were also present at the lab.

Hector Olivares was wearing an apron when arrested and Gustavo Olivares and Colunga were also arrested at the lab. Following their arrest, the Olivares brothers stuck to the prearranged "insecticide" story and warned Colunga to do the same.

### Conspiracy to Make Drugs or Conspiracy to Kill Bugs?

■ Hector Olivares claims that the evidence was insufficient to convict him of the drug crimes, contending that the evidence shows at most Hector's belief that he was making an insecticide.

When viewing the sufficiency of the evidence, we must view the evidence and the reasonable inferences that may be drawn therefrom in the light most favorable to the government. *United States v. Loalza-Vasquez,* 735 F.2d 153 (5th Cir.1984). Thus viewed, the evidence is sufficient to support a conviction if a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt. *Id.*

Hector's characterization of the evidence reflects only his own view and not a "view of the evidence and the reasonable inferences that may be drawn therefrom in the light most favorable to the government." The evidence showing Hector's involvement in the drug conspiracy includes his extensive participation in the construction of the lab and the manufacturing process, his agreement to fabricate a story if arrested, and his adoption of the fabricated story upon arrest. Moreover, he was the sole occupant of the house where the lab was set up. Hector even made statements during the course of the conspiracy indicating that he knew the end product of the manufacturing process was drugs. When viewed in the light most favorable to the government, the evidence against Hector and the reasonable inferences that may be drawn therefrom are very persuasive and certainly justified the jury's finding that Hector was guilty beyond a reasonable doubt.

In a closely related argument, Hector claims that there was not sufficient independent evidence of a conspiracy to justify the admission into evidence of several hearsay statements of a coconspirator. Specifically, Hector challenges Colunga's testimony regarding the out-of-court declarations made by Gustavo Olivares.

An out-of-court declaration of a coconspirator is admissible if the government shows by a preponderance of evidence independent of the statements themselves that (i) a conspiracy existed, (ii) the declarant and the defendant were members of the conspiracy, and (iii) the statement was made during the course and in the furtherance of the conspiracy. *United States v. James,* 590 F.2d 575, 582 (5th Cir.1979) (en banc), *cert. denied,* 442 U.S. 917, 99 S.Ct. 2836, 61 L.Ed.2d 283 (1979). Hector claims that the government did not prove by a preponderance of independent evidence that he was a member of the conspiracy.

■ The District Court's finding that there was a preponderance of independent evidence of the existence of the conspiracy and Hector's participation therein must be upheld unless clearly erroneous. *United States v. Nichols,* 695 F.2d 86 (5th Cir. 1982). All the evidence just discussed as supporting a finding of guilt beyond a reasonable doubt certainly constitutes a preponderance of evidence independent of the coconspirator hearsay statements. The out-of-court statements of Gustavo were just not that significant in light of all the other evidence showing Hector's involvement in the conspiracy. Because the independent evidence, in our view, would sup-

port even a finding of guilt beyond a reasonable doubt, we have no trouble ruling that the District Court did not err in finding that the government met the requirements of *James*. The coconspirator hearsay statements were properly admitted into evidence.

### Cross-Examining Ex-Clients Without Creating Conflicts

Both Hector and Gustavo claim that they were denied effective assistance of counsel on the ground that their attorney, Fred Galindo, was laboring under a conflict of interest because of his prior representation of Colunga in this case and because Colunga had previously paid a portion of the Olivares brothers' attorney's fees. Hector and Gustavo, relying on *United States v. Martinez*, 630 F.2d 361 (5th Cir.1980), *cert. denied*, 450 U.S. 922, 101 S.Ct. 1373, 67 L.Ed.2d 351 (1981), argue that defense counsel's previous representation of a prosecution witness creates an actual conflict of interest which requires automatic reversal without a showing of prejudice. *Martinez*, however, was expressly limited to its own facts where the defendant's attorney informed the Court that he was reluctant to vigorously cross-examine his former client for fear of violating attorney-client confidences. *Id.* at 363. The Court observed that there was no reason to doubt the lawyer's sincerity. *Id.* In the present case, Galindo never expressed any reluctance to the Court regarding his role in the defense of the Olivares brothers. In fact, in the closing argument, Galindo stressed that he had not pulled any punches.

Besides being distinguishable on the facts, *Martinez* may no longer be a correct reflection of the state of conflict of interest law in the wake of the recent Supreme Court decision in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In *Strickland*, the Supreme Court rejected a per se rule of presumed prejudice for all conflicts of interest. Therefore, *Martinez*, which held that reversal is automatic for actual conflicts of interest, is now open to serious question. Rather, according to the Supreme Court, prejudice is presumed only if the defendant demonstrates that counsel "actively represented conflicting interests," and "that an actual conflict of interest adversely affected his lawyer's performance." *Strickland v. Washington*, 466 U.S. at ——, 104 S.Ct. at 2067, 80 L.Ed.2d at 696.

■ The Olivares brothers' claim that their convictions should be reversed because their attorney was operating under a conflict of interest at the time he cross-examined Colunga is patently without merit when examined under the *Strickland* standard. The record shows that Fred Galindo in no way "actively represented conflicting interests" when he cross-examined Colunga or at any other time.[4] Although Colunga initially retained Galindo to represent all the defendants in the case, Colunga retained separate counsel shortly thereafter. Thus, Galindo's representation of Colunga was terminated long before trial and nothing in the record indicates that Galindo had Colunga's interest in mind during the trial.

Colunga's payment of part of the Olivares brothers' legal fees also does not transform Galindo's cross-examination of Colunga into an "active representation of conflicting interests." Galindo had stopped receiving payments from Colunga on behalf of Hector and Gustavo long before trial. When questioned by Galindo at trial, Colunga could not even recall the date of the last payment. Moreover, such a fee arrangement is not uncommon in drug cases. *See United States v. Carpenter*, 769 F.2d 258, 263 (5th Cir.1985).

In sum, we hold that "active representation of conflicting interests" connotes more than merely cross-examining a former client who, at an earlier stage of the case, had also paid a portion of his codefendants' legal fees.

The second element of the *Strickland* rule also militates against reversal of the convictions on conflict of interest grounds. Even if we were to find that Galindo was operating under an actual conflict of interest when he cross-examined Colunga, the record indicates that this assumed conflict did not adversely affect Galindo's performance. Quite the contrary, Galindo thoroughly cross-examined Colunga and exposed him as a liar. There is no indication that Galindo was in any way reluctant to cross-examine Colunga because of his status as a former client in this case or be-

---

4. The only time Galindo may have actively represented conflicting interests was for that short time early in the case during which he represented both Colunga and the Olivares brothers. However, both Hector and Gustavo had signed forms expressly waiving any conflict of interest arising from multiple representation.

cause he had previously paid a portion of the Olivares brothers' legal fees. In fact, Galindo's previous relationship with Colunga may have helped the Olivares brothers' defense. Galindo argued to the jury that Colunga probably expected to be treated gently on cross-examination because of the prior payment of legal fees; but, Galindo argued, the tactic obviously failed. Even more important is that Galindo's prior representation of Colunga helped Galindo expose on cross the fact that Colunga had changed his original version of the story. In other words, the former relationship facilitated a more vigorous and successful cross-examination. We conclude that this record utterly fails to show that Galindo's performance was "adversely affected" in any way.

In a nutshell, we hold that both elements of the *Strickland* rule are to be decided in favor of the government, and consequently, the claim of ineffective assistance of counsel on the grounds of conflict of interest must be rejected.

### Four for the Price of One

Hector and Gustavo raise a number of arguments in their briefs that all really boil down to one issue—whether the four conspiracies charged constituted, in law and in fact, a single conspiracy. If there was only one conspiracy, then the appellants' convictions on four counts of conspiracy violate the constitutional guarantee against double jeopardy.

The double jeopardy clause prohibits multiple prosecutions for the same offense. *United States v. Winship*, 724 F.2d 1116, 1126 (5th Cir.1984). To enforce the guarantee against double jeopardy, the Fifth Circuit has formulated special rules in conspiracy cases. These rules reflect the notion that the essence of a conspiracy offense lies in the *agreement* to violate the law. *Id.* (Emphasis supplied). Thus, each

conspiracy conviction must be supported by a corresponding separate agreement. *See Winship*, 724 F.2d at 1126.

█ The Olivares brothers were convicted of (i) conspiracy to manufacture PCP, (ii) conspiracy to possess PCP with the intent to distribute it, (iii) conspiracy to manufacture PCC, and (iv) conspiracy to possess PCC with the intent to manufacture PCP. The government concedes on appeal that only a single conspiracy existed. We agree.[5] Consequently, we hold that the double jeopardy clause was violated by the Olivares brothers' convictions on four counts of conspiracy.

█ The proper remedy for violations of the double jeopardy clause by charging multiple conspiracies when only one exists is to vacate the sentences on all the conspiracy counts and remand with instructions that all but one of the counts are to be reversed and dismissed. *United States v. Bradsby*, 628 F.2d 901, 906 (5th Cir. 1980). The government may elect which of the counts are to be dismissed. *See Bradsby*, 628 F.2d at 906. The conviction on the remaining count is to be affirmed and all defendants are then to be resentenced on the remaining conspiracy conviction.

REMANDED FOR RESENTENCING.

### ON SUGGESTIONS
### FOR REHEARING EN BANC

PER CURIAM:

The petition for rehearing is denied. We do wish to emphasize one point regarding the conflict of interest portion of the panel opinion to demonstrate that our decision is in conformity with our recent decision in *Nealy v. Cabana*, 782 F.2d 1362 (5th Cir. 1986). Under *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), a successful claim of conflict of interest is made out by showing an actual conflict of interest which adversely affect-

---

**5.** There are five factors for determining whether evidence in a conspiracy trial proves more than one offense:
(1) the time frames of the charged conspiracies;
(2) the persons acting as conspirators;
(3) the statutory offenses charged in the indictment;
(4) the overt acts charged by the government or any other description of the offense charged which indicates the nature and scope of the activity which the government sought to punish in each case; and

(5) the places where the events alleged as part of the conspiracy took place.
*United States v. Winship*, 724 F.2d 1116, 1126 (5th Cir.1984).
These factors, when applied in the present case, clearly indicate the existence of a single conspiracy. The time periods of the alleged four separate conspiracies are the same. The cast of characters was the same in all four charged conspiracies. All four charges alleged violations of 21 U.S.C. § 846. The location element also supports the single conspiracy theory.

ed the attorney's performance. Thus, our opinion in the present case is in harmony with both *Strickland* and *Nealy.* In *Nealy,* we elaborated, stating that proof of adverse effect does not require proving that the outcome of the trial was affected—it is the adequacy of representation that must be adversely affected. 782 F.2d 1365. *Nealy* is consistent with *Strickland* in this regard. Although we did not elaborate on "adverse effect" in our opinion in the present case, our application of the *Strickland* rule to the facts surrounding the attorney's representation of his clients clearly indicates that our interpretation of "adverse effect" is in harmony with that in *Nealy.*

Treating the suggestions for rehearing en banc as petitions for panel rehearing, it is ordered that the petitions for panel rehearing are DENIED. No member of the panel or Judge in regular active service of this Court having requested that the Court be polled on rehearing en banc (Federal Rules of Appellate Procedure and Local Rule 35), the suggestions for Rehearing En Banc are

DENIED.