**Opinion filed January 31, 2020**



In The

# Eleventh Court of Appeals

_____

## No. 11-18-00016-CR

_____

## HOWARD DEE STURGIS, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 104th District Court**

**Taylor County, Texas**

**Trial Court Cause No. 20897B**

## M E M O R A N D U M   O P I N I O N

The jury convicted Howard Dee Sturgis of continuous sexual abuse of a child, a first-degree felony offense. *See* TEX. PENAL CODE ANN. § 21.02(b), (h) (West 2019). The jury assessed Appellant's punishment at confinement in the Institutional Division of the Texas Department of Criminal Justice for a term of life. In a single issue, Appellant contends that his right to effective assistance of counsel was violated because his trial counsel had a conflict of interest. We affirm.

*Background Facts*

In May 2015, Appellant began a romantic relationship with C.D., an adult. C.D. had two daughters, A.D. and S.D. When the events giving rise to this case occurred, A.D. was nine and S.D. was seven.

In early April 2017, A.D. made an outcry accusing Appellant and C.D. of sexually abusing A.D. and S.D. A few days later, Appellant and C.D. met with an attorney (Appellant's trial counsel) to discuss the matter. When criminal charges were brought later in April, Appellant and C.D. retained Appellant's trial counsel to jointly represent them.

Shortly thereafter, Appellant's trial counsel learned that the State planned to offer C.D. a plea agreement in exchange for her testimony against Appellant.[1] Because a conflict of interest was likely to arise between C.D. and Appellant, Appellant's trial counsel decided that he could not continue representing both clients. Appellant's trial counsel met with C.D. and Appellant to discuss the situation. Appellant and C.D. agreed that C.D. should seek alternative representation because Appellant was paying the entire fee. Appellant's trial counsel then withdrew from representing C.D., and C.D. requested a court-appointed attorney. Thus, Appellant's trial counsel represented C.D. for approximately one month between April and early May 2017.

Appellant's case went to trial in late October 2017, approximately six months after Appellant's trial counsel withdrew from representing C.D. When Appellant's trial began, the State had not reached a plea agreement with C.D. On the third day of trial, immediately after the State closed its case-in-chief, the prosecutor learned that C.D. wanted to reopen plea negotiations. While the court was in a lunch recess,

---

[1]Many of the details concerning the prior joint representation were developed in a hearing on Appellant's motion for new trial.

the prosecutor met with C.D. and her appointed counsel. During this meeting, the State reached an agreement with C.D. to testify against Appellant.

When the trial proceedings resumed after the recess, the State moved to reopen its case-in-chief so that C.D. could testify. Appellant's trial counsel initially objected to C.D.'s testimony on the basis that it would be cumulative of other testimony that the jury had already heard. Appellant's trial counsel further advised the trial court that he had jointly represented Appellant and C.D. for a period of time. He informed the trial court that C.D.'s anticipated testimony would be inconsistent with what C.D. had told him when he represented her.

The trial court heard arguments from the State and Appellant's trial counsel. The trial court also informally questioned C.D.'s court-appointed attorney. C.D.'s attorney advised the trial court that C.D. knew that Appellant's trial counsel could cross-examine her using their privileged communications. He also stated that C.D. voluntarily and knowingly waived any privilege she had with Appellant's trial counsel. The trial court allowed the State to reopen its case and call C.D. as a witness.

On direct examination, C.D. testified that she witnessed Appellant committing sexual acts with A.D. and S.D. On cross-examination, C.D. admitted that she had previously told Appellant's trial counsel a different version of events. Appellant's trial counsel then asked C.D. if she remembered what she had said at that time, and C.D. replied: "I told you that it was a crock of BS and that there's no way that [Appellant] could have done this stuff to [A.D. and S.D.]." Appellant's trial counsel further questioned C.D. about her use of illicit substances, about A.D.'s and S.D.'s cognitive and psychological conditions, and about C.D.'s plea agreement and its effect on her motivation for testifying.

The jury convicted Appellant of continuous sexual abuse of a child. Appellant subsequently filed a motion for new trial. The hearing on the motion for new trial

dealt extensively with Appellant's claim that his trial counsel was ineffective because of a conflict of interest. Appellant, his trial counsel, and C.D. all testified at the hearing. Appellant acknowledged that his trial counsel had confronted C.D. with C.D.'s prior statements and accused C.D. of lying. The trial court denied Appellant's motion for new trial. This appeal followed.

*Analysis*

In his sole issue on appeal, Appellant contends that his trial counsel rendered ineffective assistance due to a conflict of interest. Appellant argues that his trial counsel's prior representation of C.D. created an actual conflict of interest when the State called C.D. as a witness at Appellant's trial. Appellant also challenges the thoroughness with which the trial court investigated the purported conflict.

An attorney's conflict of interest may result in ineffective assistance of counsel. *Ex parte Morrow*, 952 S.W.2d 530, 538 (Tex. Crim. App. 1997) (citing *Strickland v. Washington*, 466 U.S. 668, 692 (1984)). The Sixth Amendment guarantees the right to reasonably effective assistance of counsel, which includes the right to conflict-free representation. *See Strickland*, 466 U.S. at 692; *Cuyler v. Sullivan*, 446 U.S. 335, 348–50 (1980). In the case of a conflict of interest, the appellant must demonstrate that (1) trial counsel was burdened by an actual conflict of interest and (2) the conflict actually affected the adequacy of counsel's representation. *Cuyler*, 446 U.S. at 349–50; *Acosta v. State*, 233 S.W.3d 349, 356 (Tex. Crim. App. 2007) (citing *Cuyler*).

Appellant presented his claim of ineffective assistance of counsel to the trial court in his motion for new trial. The trial court denied the motion for new trial after a full evidentiary hearing on the matter. When an appellant presents his ineffective-assistance claim to the trial court in a motion for new trial, an appellate court analyzes his claim as a challenge to the denial of his motion for new trial. *See Charles v. State*, 146 S.W.3d 204, 208 (Tex. Crim. App. 2004) (holding appropriate

standard of review for ineffective-assistance claim brought forth in motion for new trial is abuse of discretion), *superseded by statute on other grounds as stated in State v. Herndon*, 215 S.W.3d 901, 905 n.5 (Tex. Crim. App. 2007); *see also Riley v. State*, 378 S.W.3d 453, 457 (Tex. Crim. App. 2012), *overruled on other grounds by Miller v. State*, 548 S.W.3d 497 (Tex. Crim. App. 2018).  As stated in *Riley*:

> An appellate court reviews a trial court's denial of a motion for new trial for an abuse of discretion, reversing only if the trial judge's opinion was clearly erroneous and arbitrary.  A trial court abuses its discretion if no reasonable view of the record could support the trial court's ruling.  This deferential review requires the appellate court to view the evidence in the light most favorable to the trial court's ruling.  The appellate court must not substitute its own judgment for that of the trial court and must uphold the trial court's ruling if it is within the zone of reasonable disagreement.  "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous."

378 S.W.3d at 457 (footnotes omitted) (quoting *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 574 (1985)).

In *Odelugo v. State*, the Texas Court of Criminal Appeals addressed a claim of ineffective assistance of counsel based on a conflict of interest that was presented in a motion for new trial.  443 S.W.3d 131, 136–37 (Tex. Crim. App. 2014).  The trial court is initially charged with determining whether the appellant carried the burden as to the elements of his conflict-of-interest ineffective-assistance claim.  *Id.* at 137.  The trial court "has the right to accept or reject any part of a witness's testimony."  *Id.* (quoting *Charles*, 146 S.W.3d at 208 n.7).

> [B]ecause claims of ineffective assistance of counsel involve "mixed questions of law and fact" that often "contain[] 'subsidiary questions of historical fact, some of which may turn upon the credibility and demeanor of witnesses,'" an appellate court should review the trial court's rulings on the matter "for an abuse of discretion, reversing only if the trial judge's ruling was clearly erroneous and arbitrary[,]" such as

5

when "no reasonable view of the record could support the trial court's ruling."

*Id.* (footnote omitted). But "[w]hen . . . the trial court's ruling on a motion for new trial is supported by at least one reasonable view of the record, the ruling may not be disturbed." *Id.* at 140.

Regarding the first *Cuyler* prong, "[a]n 'actual conflict of interest' exists if counsel is required to make a choice between advancing his client's interest in a fair trial or advancing other interests (perhaps counsel's own) to the detriment of his client's interest." *Acosta*, 233 S.W.3d at 355 (quoting *Monreal v. State*, 947 S.W.2d 559, 564 (Tex. Crim. App. 1997)). An appellant making an ineffective-assistance claim predicated on a conflict of interest must demonstrate the existence of the conflict by a preponderance of the evidence. *Odelugo*, 443 S.W.3d at 136. If an appellant fails to present any evidence on the issue or if the evidence "'is in perfect equipoise,' the appellant's claim will fail." *Id.* at 136–37 (quoting *Broxton v. State*, 909 S.W.2d 912, 920 (Tex. Crim. App. 1995)).

Joint representation of codefendants creates a potential conflict, but it is insufficient, in and of itself, to demonstrate an actual conflict necessary for an ineffective-assistance claim. *Johnson v. State*, 583 S.W.3d 300, 316 (Tex. App.—Fort Worth 2019, pet. ref'd). Nor does the fact that an attorney has to cross-examine a former client translate into an actual conflict of interest. *Id.* (citing *United States v. Olivares*, 786 F.2d 659, 663 (5th Cir. 1986)). Instead, an actual conflict of interest exists when the attorney actively represents conflicting interests. *Acosta*, 233 S.W.3d at 355 (citing *Cuyler*, 446 U.S. at 349–50).

Regarding the second *Cuyler* prong, an appellant's allegation alone that counsel has not been zealous in his representation does not establish an actual conflict of interest. *See Acosta*, 233 S.W.3d at 355 (noting that the appellant must show that trial counsel "actually acted" on behalf of other interests at trial). "[T]he

6

possibility of conflict is insufficient to impugn a criminal conviction." *Cuyler*, 446 U.S. at 350. Theorizing about possible conflicts does not satisfy an appellant's burden; rather, "[a]n appellant must identify specific instances in the record that reflect a choice that counsel made between possible alternative courses of action, such as eliciting (or failing to elicit) evidence helpful to one [client's interest] but harmful to the other [client's interest]." *Johnson*, 583 S.W.3d at 315 (first alteration in original) (quoting *Malek v. State*, No. 03-10-00534-CR, 2012 WL 370551, at *7 (Tex. App.—Austin Feb. 1, 2012, pet. ref'd) (mem. op. on reh'g, not designated for publication)).

An effective cross-examination can risk breaching an attorney's duty to maintain a former client's confidences. *Id.* at 316 (citing Tex. Disciplinary Rules Prof'l Conduct R. 1.05, 1.09, *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G, app. A (Tex. State Bar R. art. X, § 9)). A defendant's right to effective assistance of counsel is violated when his lawyer cannot cross-examine a government witness, or is chilled in doing so, because of the attorney–client privilege stemming from the lawyer's prior representation of the government witness. *Id.*

The facts in *Johnson* are similar to the facts in this case. *See id.* at 311–12. The trial counsel in *Johnson* had previously represented the defendant and the defendant's ex-wife on the "same set of cases." *Id.* at 312. The representation of the ex-wife lasted approximately one month, and it terminated eight months before trial. *Id.* When the State sought to call the ex-wife, the trial counsel in *Johnson* asserted that he had an ethical dilemma because he would be cross-examining his former client. *Id.* at 312–13. The ex-wife waived any claim of privilege between her and trial counsel. *Id.* at 313. Afterwards, trial counsel vigorously cross-examined the ex-wife. *Id.* The Fort Worth Court of Appeals concluded in *Johnson* that the potential conflict did not blossom into an actual conflict because "the very basis for the actual conflict was removed by the waiver." *Id.* at 316. "The waiver

removed counsel from the vise of having to decide whether to favor the interests of one client over the other." *Id.* The court also concluded that no potential conflict colored counsel's action at trial. *Id.* at 317.

Appellant raises a potential concern regarding his trial counsel's inability to cross-examine C.D. due to the prior representation. But the concern for this potential conflict never materialized into an actual conflict in this case. As the holder of the privilege, C.D. had the right to waive any claim of privilege that existed between Appellant's trial counsel and herself. *See Bailey v. State*, 507 S.W.3d 740, 747 (Tex. Crim. App. 2016) ("[Texas Rule of Evidence] 511(1) specifies that a person on whom the rules confer a privilege against disclosure waives the privilege if the person voluntarily discloses or consents to disclosure of any significant part of the privileged matter, unless such disclosure itself is privileged."). Thus, we cannot say that the potential conflict ever blossomed into an actual conflict because C.D.'s waiver removed the very basis of the actual conflict. *See Johnson*, 583 S.W.3d at 316.

Appellant also argues that his trial counsel had a personal conflict of interest. Specifically, Appellant contends that his trial counsel continued representing Appellant to avoid having to refund Appellant's fee. Appellant has pointed to nothing in the record that supports this conclusion, nor have we found any support for it. Appellant's assertions amount to merely theorizing about potential conflicts, which is insufficient to sustain his burden. *Id.* at 315. Thus, Appellant has failed to demonstrate an actual conflict of interest.

In addition to the lack of an actual conflict in this case, the record reflects that no conflict—actual or potential—colored Appellant's trial counsel's actions. Appellant's trial counsel thoroughly cross-examined C.D. Appellant's counsel impeached C.D. with statements C.D. made in the course of their attorney–client relationship. These statements would have been protected from disclosure because

of the attorney–client privilege, but as we discussed, C.D. waived the privilege between herself and Appellant's trial counsel. While Appellant asserts that the alleged conflict impeded his trial counsel's cross-examination of C.D., the record demonstrates the contrary. Thus, Appellant has not met his burden under the second *Cuyler* prong to demonstrate that the alleged conflict adversely affected his trial counsel's performance.

Appellant also challenges the adequacy of the trial court's inquiry into the alleged conflict of interest. Appellant contends that, upon learning of the potential conflict, the trial court should have halted the proceedings and held a hearing sua sponte to investigate the alleged conflict. Because Appellant concedes that his trial counsel informed the trial court of the potential conflict, Appellant can only be challenging the thoroughness with which the trial court investigated the conflict. *See Routier v. State*, 112 S.W.3d 554, 581 (Tex. Crim. App. 2003) (citing *Holloway v. Arkansas*, 435 U.S. 475, 484 (1978)). This presents Appellant with an uphill battle, however, because only narrow grounds exist for attacking a conviction based on the nature of the trial court's inquiry, and an appellant usually must still prove the conflict adversely impacted his representation. *See Johnson*, 583 S.W.3d at 314.

When a defendant or his attorney brings a potential conflict of interest to the trial court's attention, the trial court is obligated to investigate the potential conflict to determine "whether the risk of the conflict of interest is too remote to warrant separate counsel." *Routier*, 112 S.W.3d at 581 (quoting *Holloway*, 435 U.S. at 484). Automatic reversal is required only where the defendant or his counsel informs the trial court of the conflict and the trial court fails to take adequate steps to investigate the conflict. *Holloway*, 135 U.S. at 484. Although *Holloway* involved a conflict within the multiple-representation context, the Court of Criminal Appeals has extended *Holloway*'s duty to inquire to all attorney conflicts of interest, not just

conflicts involving multiple codefendants. *See Dunn v. State*, 819 S.W.2d 510, 519 (Tex. Crim. App. 1991).

Whether the trial court's inquiry into an alleged conflict is adequate depends on the circumstances. *See id.* (concluding that the trial court's inquiry was adequate given the circumstances of the case); *see also United States v. Fields*, 483 F.3d 313, 352 (5th Cir. 2007) ("The duty to inquire is not so formalistic as to require affirmative questioning when such is rendered unnecessary because the parties have volunteered all the relevant information for a court to determine that no substantial conflict exists."). It is not always necessary for the trial court to hold a hearing concerning an alleged conflict when the defense does not request one or when there is not a valid basis for the asserted conflict. *See, e.g.*, *Malcom v. State*, 628 S.W.2d 790, 791–92 (Tex. Crim. App. 1982) (stating that the trial court was not required to hold a hearing on a motion to withdraw where the defendant did not request one); *see also Calloway v. State*, 699 S.W.2d 824, 830–31 (Tex. Crim. App. 1985) (holding that the trial court did not neglect its duty to hold a hearing when the motion to withdraw did not advance a valid basis for the conflict).

We conclude that the trial court adequately investigated the potential conflict of interest at trial. After Appellant's trial counsel objected to the State calling C.D., the trial court heard arguments from Appellant's trial counsel and the State. The trial court learned that the basis for the potential conflict was Appellant's trial counsel's short-lived and long-since-terminated representation of C.D. The trial court then informally questioned C.D.'s appointed counsel, who informed the trial court that C.D. was willing to waive any claim of privilege that she had with Appellant's trial counsel. Once the trial court was convinced that C.D. had validly waived the privilege, it was reasonable for the trial court to conclude that there was no actual conflict of interest. Moreover, at the hearing on the motion for new trial, the parties and the trial court thoroughly explored the alleged conflict and its effect,

if any, on the trial.  Therefore, the trial court's investigation into the conflict was not constitutionally inadequate.

Finally, Appellant asserts that the trial court should have sua sponte declared a mistrial because of the alleged conflict.  We disagree.  To avoid a double jeopardy violation, a mistrial granted without the defendant's consent must be based on manifest necessity.  *See Hill v. State*, 90 S.W.3d 308, 313 (Tex. Crim. App. 2002).  A trial judge's discretion to declare a mistrial based on manifest necessity is limited to "very extraordinary and striking circumstances."  *Id.* (quoting *Downum v. United States*, 372 U.S. 734, 736 (1963)).  Given the fact that no actual conflict of interest existed, a sua sponte mistrial was not warranted.  We overrule Appellant's sole issue.

*This Court's Ruling*

We affirm the judgment of the trial court.


JOHN M. BAILEY
CHIEF JUSTICE


January 31, 2020

Do not publish.  *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Stretcher, J., and Wright, S.C.J.[2]

Willson, J., not participating.

---

[2]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.