United States Court of Appeals
Fifth Circuit

**F I L E D**

**December 6, 2006**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT
_____

No. 05-41140
_____

UNITED STATES OF AMERICA,

                                        Plaintiff-Appellee,

                    versus

MIGUEL ANGEL GARCIA-JASSO,

                                        Defendant-Appellant.


                    --------------------
                       Appeal from the
                 United States District Court
              for the Southern District of Texas
                       (1:04-CR-440(1))
                    --------------------

Before WIENER and CLEMENT, Circuit Judges, and MARTINEZ, District

Judge.[*]

PHILIP R. MARTINEZ, District Judge:

    Defendant-Appellant Miguel Angel Garcia-Jasso challenges his

conviction, entered pursuant to a guilty plea to both counts of a

two-count indictment charging him with violations of the Controlled

Substances Act.  Garcia-Jasso asks that the conviction be vacated,

claiming that his attorney below labored under two conflicts of

interest, the first stemming from his attorney's representation of

Garcia-Jasso's wife, and the second arising from his attorney's

alleged complicity in Garcia-Jasso's flight from the jurisdiction.

_____

    [*] District Judge for the Western District of Texas, sitting by
designation.

Garcia-Jasso claims that the district court became aware of these conflicts during the sentencing proceedings and failed to conduct a *Garcia* hearing to ensure that Garcia-Jasso knowingly waived his right to conflict-free counsel. We conclude that the district court did not err in failing to conduct a *Garcia* hearing, as the record is devoid of evidence of an actual conflict of interest. Thus, we affirm Garcia-Jasso's conviction.

## I. FACTS & PROCEEDINGS

On August 25, 2004, Garcia-Jasso pleaded guilty to both counts of a two-count indictment charging him with conspiracy to possess with intent to distribute approximately 625 kilograms of marijuana as well as possession with intent to distribute the same. The crimes charged in the indictment occurred between February 24, 2003, and March 1, 2003, and on March 1, 2003, three of Garcia-Jasso's co-conspirators were arrested. According to the government's statement of the facts during the plea colloquy, an arrest warrant was not immediately issued as to Garcia-Jasso, given that "a representative of the defendant, Garcia-Jasso, contacted the case agent to ostensibly cooperate on the case, asking that any arrest warrant be delayed."

In June 2003, Garcia-Jasso left Texas for Michigan. On July 11, 2003, the United States District Court for the Southern District of Texas, Brownsville Division, issued an arrest warrant for Garcia-Jasso. Almost a year later, on June 4, 2004, Garcia-

2

Jasso was taken into custody in the Western District of Michigan pursuant to the warrant issued on July 11, 2003. He was transferred to Texas on June 14, 2004.

Represented by counsel Robert "Eddy" De la Garza, Garcia-Jasso pleaded guilty on August 25, 2004. On February 28, 2005, the district court sentenced Garcia-Jasso to two concurrent 135-month terms of imprisonment, to be followed by concurrent five-year terms of supervised release. During the sentencing hearing, De la Garza objected to, among other things, a proposed two-level obstruction of justice enhancement under U.S.S.G. § 3C1.1. The Presentence Investigation Report ("PSR") included a recommendation for an obstruction of justice enhancement because Garcia-Jasso failed to meet with DEA agents, because he knew that an arrest warrant had been issued against him, and because he knew that he was wanted for questioning.

In reviewing the objection to the obstruction of justice enhancement, the district court noted the possible need for De la Garza to testify regarding whether a DEA agent told him about the existence of an arrest warrant, and if so, whether De la Garza in turn informed Garcia-Jasso about the issuance of the arrest warrant. After some discussion, De la Garza stated that he would prefer to proceed as Garcia-Jasso's attorney and did not testify. At the sentencing hearing, the DEA agent testified that he informed De la Garza about the existence of an arrest warrant for Garcia-Jasso in August 2003 (approximately two months after Garcia-Jasso

3

had left Texas for Michigan).  The district court overruled Garcia-Jasso's objection to the obstruction of justice enhancement.

During the sentencing hearing, the DEA agent also testified that De la Garza had informed him on March 3, 2003, that he was representing both Garcia-Jasso and Linda Vasquez, Garcia-Jasso's common-law wife.  Garcia-Jasso mistakenly alleges that the DEA agent testified that De la Garza claimed to represent both Garcia-Jasso and Vasquez after the warrant had been issued.  The record only includes testimony that De la Garza made this representation on March 3, 2003, approximately four months before an arrest warrant was issued for Garcia-Jasso.

## II.  STANDARD OF REVIEW

We review de novo the determination of whether a conflict of interest existed.  *United States v. Infante*, 404 F.3d 376, 391 (5th Cir. 2005).

## III.  DISCUSSION

### A.  Conflict of Interest and the Need for a *Garcia* Hearing

The Sixth Amendment right to counsel includes the "right to representation that is free from any conflict of interest." *United States v. Vaquero*, 997 F.2d 78, 89 (5th Cir. 1993).  "A conflict exists when defense counsel places himself in a position conducive to divided loyalties." *United States v. Carpenter*, 769 F.2d 258, 263 (5th Cir. 1985).  If a defendant chooses to proceed with representation by counsel who has a conflict of interest, a

4

district court must conduct what is commonly known as a "*Garcia* hearing*" to ensure a valid waiver by the defendant of his Sixth Amendment right. *United States v. Garcia*, 517 F.2d 272, 278 (5th Cir. 1975), *abrogated on other grounds by Flanagan v. United States*, 465 U.S. 259, 263 & n.2 (1984). During the hearing, the district court must "ensure that the defendant (1) is aware that a conflict of interest exists; (2) realizes the potential hazards to his defense by continuing with such counsel under the onus of a conflict; and (3) is aware of his right to obtain other counsel." *United States v. Greig*, 967 F.2d 1018, 1022 (5th Cir. 1992). A district court need only conduct a *Garcia* hearing if there is an actual conflict of interest. *Carpenter*, 769 F.2d at 263.

Garcia-Jasso argues that the district court should have conducted a *Garcia* hearing once it became aware of certain facts demonstrating De la Garza's conflicts of interest. Garcia-Jasso claims that De la Garza acted under two conflicts of interest: (1) De la Garza had at one point represented both Garcia-Jasso and Garcia-Jasso's wife, Vasquez, and (2) De la Garza was potentially criminally liable for his role in Garcia-Jasso's obstruction of justice.

>    1.    *Representation of Garcia-Jasso and Garcia-Jasso's Wife*

We have previously recognized that "[j]oint representation does not necessarily create a conflict of interest." *United States*

5

*v. Rico*, 51 F.3d 495, 508 (5th Cir. 1995). A conflict will exist only "when defense counsel is compelled to compromise his or her duty of loyalty or zealous advocacy to the accused by choosing between or blending the divergent or competing interests of a former or current client." *Perillo v. Johnson*, 205 F.3d 775, 781 (5th Cir. 2000). A defendant must show more than a speculative or potential conflict. *Infante*, 404 F.3d at 391. "It must be demonstrated that the attorney made a choice between possible alternative courses of action . . . . If he did not make such a choice, the conflict remained hypothetical." *Stevenson v. Newsome*, 774 F.2d 1558, 1561-62 (11th Cir. 1985)(internal quotation omitted), *quoted in Beets v. Scott*, 65 F.3d 1258, 1277 (5th Cir. 1995) (en banc).

Garcia-Jasso contends that the district court should have recognized the existence of a conflict when the DEA agent testified during the sentencing hearing that De la Garza had previously stated that he was representing both Garcia-Jasso "and also the wife," Vasquez. Garcia-Jasso claims that De la Garza's statement evidenced a conflict because "one of this lawyer's defendants (the appellant) appears to have been traded to the DEA for another (the ex-wife)," a reference to the fact that Vasquez was never indicted.

However, there is insufficient evidence to support Garcia-Jasso's claim that this multiple representation developed into an actual conflict which forced De la Garza to decide between the

6

interests of Garcia-Jasso and Vasquez. As previously noted, the record reflects only that De la Garza was engaged in this multiple representation of Garcia-Jasso and Vasquez on March 3, 2003, four months before the government filed a complaint against Garcia-Jasso. At that time, Garcia-Jasso and Vasquez were still married. It is likely that any multiple representation was undertaken in order to advance their common interest as co-habitants of a home then under investigation.

Furthermore, nothing in the record suggests that De la Garza ever represented Vasquez in connection with any criminal proceeding. There is no evidence in the record that demonstrates that De la Garza's responsibility to Vasquez was substantial or that De la Garza ever had to make a choice between Vasquez's interests and Garcia-Jasso's interests. Garcia-Jasso requests that we draw an "off-the-record inference" of a conflict, but cannot point to any evidence in the record demonstrating that De la Garza's representation of Vasquez compromised his obligations to Garcia-Jasso. Therefore, we conclude that there is insufficient evidence of an actual conflict of interest stemming from De la Garza's representation of Garcia-Jasso and Vasquez, and that the district court did not err in failing to conduct a *Garcia* hearing after the DEA agent's testimony regarding the multiple representation.

>    2.    *De la Garza's Self-Interest in Avoiding Criminal Responsibility*

7

Garcia-Jasso additionally claims that De la Garza was subject to a conflict of interest because De la Garza was potentially criminally liable for his involvement in Garcia-Jasso's obstruction of justice. To prevail, Garcia-Jasso must show that De la Garza "was required to make a choice advancing his own interests to the detriment of his client's interests." *Beets v. Collins*, 986 F.2d 1478, 1486 (5th Cir. 1993).

Garcia-Jasso argues that De la Garza improperly convinced him to plead guilty and failed to present any exculpatory evidence at the sentencing hearing, in order to avoid incriminating himself. There is no evidence in the record, however, to support Garcia-Jasso's claim that a conflict of interest existed which prompted De la Garza to protect himself at Garcia-Jasso's expense. The PSR states that Garcia-Jasso left the jurisdiction in June 2003, the district court issued the warrant for his arrest in July 2003, and his attorney learned of the warrant in August 2003. Garcia-Jasso had already left Texas when De la Garza learned about the warrant. Therefore, there is no reason to infer that Garcia-Jasso fled the jurisdiction at De la Garza's instructions and no reason to conclude that an actual conflict existed.

While the district judge mentioned the possibility that De la Garza might need to testify on behalf of his client at the sentencing hearings, there is no evidence that this possibility created a conflict of interest. A lawyer's need to testify for his

8

client "does not constitute a per se conflict of interest, but instead must be evaluated under the totality of the circumstances to determine whether an actual conflict exists between the interests of the lawyer and client." *United States v. Martinez*, 151 F.3d 384, 393 (5th Cir. 1998) (internal quotation omitted).

The record does not demonstrate that De la Garza played a role in Garcia-Jasso's departure or absence from the jurisdiction, so there is no evidence that De la Garza would have had reason to fear that his own testimony might subject him to criminal liability. Thus, there is no evidence that De la Garza acted under a conflict of interest between his own interests and those of his client, Garcia-Jasso.

*3.  Conclusion*

Garcia-Jasso's claims that De la Garza labored under two conflicts of interest rely on speculation and inferences that are unsupported by the record. Because there is insufficient evidence demonstrating that an actual conflict of interest existed, either based on multiple representation or De la Garza's self-interest, we conclude that the district court did not err in failing to conduct a *Garcia* hearing.

**B.  Ineffective Assistance of Counsel**

Garcia-Jasso's arguments could alternatively be construed as raising an ineffective assistance of counsel claim, independent of any conflict of interest, as Garcia-Jasso presents numerous

instances in which he claims De la Garza performed deficiently. "The general rule in this circuit is that a claim of ineffective assistance of counsel cannot be resolved on direct appeal when the claim has not been raised before the district court since no opportunity existed to develop the record on the merits of the allegations." *United States v. Higdon*, 832 F.2d 312, 313-14 (5th Cir. 1987). Direct review is limited to those situations "when the record has provided substantial details about the attorney's conduct." *United States v. Bounds*, 943 F.2d 541, 544 (5th Cir. 1991). This rule ensures that the merits of a claim may be fairly evaluated. *Id.*

The record regarding Garcia-Jasso's claims is not well-developed. Garcia-Jasso argues that De la Garza performed deficiently in failing to: (1) file pre-trial motions in a timely manner, (2) attend a pre-trial motion hearing, (3) file any written objections to the PSR, (4) call any witnesses or present any evidence to rebut the prosecutor's evidence, (5) offer evidence as to the ownership of the hunting rifle, and (6) present public records at the sentencing hearing as to control of the home and vehicle involved in the offense. However, the reasons for De la Garza's decisions and any plausible alternative strategies available to him are unclear. *See Higdon*, 832 F.2d at 314 (refusing to review an ineffective assistance claim on direct appeal because the court could "only speculate on the basis for

10

defense counsel's actions"). Therefore, we decline to reach the merits of an ineffective assistance claim, without prejudice to Garcia-Jasso's right to raise such claims through a motion brought pursuant to 28 U.S.C. § 2255.

### III. CONCLUSION

For these reasons, we AFFIRM Garcia-Jasso's conviction.