*616 EMILIO M. GARZA, Circuit Judge:
Defendanh-Appellant Aaron Hernandez appeals his convictions and sentence for (1) conspiracy to possess with intent to distribute cocaine and (2) aiding and abetting the theft of government money. "We affirm the convictions, but we vacate his sentence and remand for further proceedings.
I
A Federal Bureau of Investigation (“FBI”) agent received information from a confidential source, Lorenzo Guerra, that Hernandez was “selling kilogram quantities of cocaine.” Guerra arranged a meeting with Hernandez at the latter’s residence to discuss the purchase of cocaine. At the meeting, Hernandez showed Guerra a small amount of cocaine and indicated that he could sell him one kilogram. Hernandez told Guerra that his brother, Daniel Hernandez (“Daniel”), had the kilogram of cocaine and that he should return to talk to Daniel. Two days later, Guerra returned to Hernandez’s residence and tentatively agreed to purchase one kilogram of cocaine from Hernandez for $17,000. At this meeting, Hernandez again showed Guerra a small amount of cocaine; he also showed Guerra a .45 caliber handgun that he had tucked in his waistband. Guerra finalized the $17,000 purchase price in a subsequent telephone conversation with Daniel.
A few days later, Guerra met Daniel in a parking lot of an apartment complex with $17,000 in FBI funds to complete the purchase. Daniel got in Guerra’s truck and the two of them drove to another apartment complex. After they stopped, Daniel told Guerra to give him the money and he would bring the cocaine back. When Guerra balked, Daniel explained that the person holding the cocaine did not want to meet Guerra. Guerra eventually gave Daniel the money, but Daniel took the money and fled in a waiting car.
A grand jury returned a two-count indictment against Hernandez, his wife Erica Carrillo, Daniel, and another person.[1] The indictment charged all four defendants with one count of conspiracy to possess with intent to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. §§ 841(a), 841(B)(ii) & 846. And it charged Hernandez, Daniel, and Carrillo with aiding and abetting the theft and conversion to their own use of $17,000 in U.S. currency belonging to the FBI, in violation of 18 U.S.C. § 641.
The indictment was unsealed on February 19, 2010 upon the arrest of Hernandez, Daniel, and Carrillo. Shortly thereafter, Attorney Sergio Gonzalez entered an appearance for Hernandez and his wife Carrillo. At a detention hearing for the Hernandez brothers that same day, Attorney Gonzalez revealed that he had represented Daniel in a felony case in state court that had been dismissed a week earlier.
The district court eventually set a hearing to review the conflict of interest stemming from Attorney Gonzalez’s representation of both Hernandez and his wife. The court found that a conflict of interest existed and ordered Gonzalez to withdraw from representation of Carrillo.
Five days before trial, the Government moved to disqualify Attorney Gonzalez as counsel for Hernandez based on his representation of Daniel in the state felony matter that Gonzalez had mentioned in the detention hearing. The Government’s mo *617 tion stated that Daniel had pleaded guilty to both counts of the indictment and that it would probably call Daniel as a witness at Hernandez’s trial. It contended that Attorney Gonzalez would have a conflict of interest if Daniel were called to testify because Gonzalez might have information from an attorney/client relationship that (1) would prevent him from representing Hernandez effectively or (2) would cause him to breach the attorney/client privilege he owed to Daniel. The Government requested a “Garcia hearing” to ensure a valid waiver by Hernandez of his right to representation free from any conflict of interest. See United States v. Garcia, 517 F.2d 272, 278 (5th Cir.1975), abrogated on other grounds by Flanagan v. United States, 465 U.S. 259, 263 & n. 2, 104 S.Ct. 1051, 79 L.Ed.2d 288 (1984). Attached to its motion, the Government submitted copies of state court documents showing that Gonzalez had represented Daniel for one day — from February 3 to February 4, 2010, when the state felony case was dismissed. The Government also indicated that Daniel had advised it that Attorney Gonzalez represented him on another occasion as well.
On the morning of the first day of trial, the district court held a hearing prior to jury selection on the Government’s motion to disqualify-Attorney Gonzalez. At the hearing the Government acknowledged that Daniel’s prior state case, which involved charges of felony marijuana possession, was not related to this case. 'However, the Government expressed concern that it planned to call Daniel as a witness in the instant case and that Attorney Gonzalez might not be able to effectively cross-examine him without a conflict of interest arising. Attorney Gonzalez responded that he had “never even spoke with ... Daniel” regarding the prior case; he said that he had simply “showed up at the first hearing,” “looked at the file,” and “talked to the [prosecutor],” before the prosecutor said, “You’re right[;] It’s a bad case[ ]” and dismissed the case. Attorney Gonzalez further stated that he and Daniel “never' even had an attorney/client communica- - tion” and that “there’s nothing that I could use adverse that I learned from him because we had never had a communication.” Attorney Gonzalez also advised the district court that Daniel was aware that Gonzalez was going to represent Hernandez in this case and had not voiced an objection. The district court denied the Government’s motion to disqualify Gonzalez.
That afternoon, the Government renewed the motion with support from Daniel’s attorney in this case. Daniel’s counsel argued that his client risked being prejudiced by his former attorney’s, cross-examination if he was called to testify at trial. The district court replied that Attorney Gonzalez had explained that “he didn’t even talk to [Daniel]” during the prior representation. Further, the district court stated that any cross-examination of Daniel by Attorney Gonzalez would be limited. The court then orally denied the Government’s motion to disqualify Gonzalez a second time. The next day, the district court issued a written order denying the Government’s motion. The district court concluded that Attorney Gonzalez’s prior representation of Daniel did not present a conflict of interest because (1) Daniel’s prior case was unrelated to the current case, (2) Gonzalez’s representation of Daniel in the prior case had unambiguously ended before his representation of Hernandez began, (3) Gonzalez’s prior representation of Daniel was “extremely limited,” and (4) Gonzalez had attested that he did not learn anything in his prior representation of Daniel that he could use to harm either Hernandez or Daniel.
Daniel did not testify at the ensuing trial, and the jury found Hernandez guilty on both counts.
*618 For count 1, the cocaine conspiracy offense, the presentence report (“PSR”) determined that Hernandez’s base offense level was 26. U.S.S.G. § 2D1.1. The PSR then increased his base offense level by two levels for possession of a dangerous weapon — the handgun and “two AK-47 style rifles” — giving him an adjusted offense level of 28. Id. § 2D1.1 (b)(1). For count 2, the theft of government money offense, the PSR determined that Hernandez’s base offense level was 6. Id. § 2B1.1. The PSR then increased his base offense level by four levels because the theft involved more than $10,000 and less than $30,000, id. § 2Bl.l(b)(l)(C), thereby giving him an adjusted offense level of 10. . The PSR used the higher of Hernandez’s two adjusted offense levels to determine his total offense level — 28—and it then added a one-level multi-count adjustment pursuant to U.S.S.G. § 3D1.4. With a total offense level of 29 and a criminal history category of II, Hernandez’s advisory sentencing range under the Guidelines was 97 to 121 months, according to the PSR.
The district court adopted the PSR and, finding no reason to depart from the Guidelines range, sentenced him to concurrent 120-month terms of imprisonment. The district court (1) assessed a fine in the amount of $2,500 and a $200 special assessment and (2) rendered a money judgment of forfeiture in the amount of $17,000. This appeal followed.
II
A
First, Hernandez claims that the district court erred when it determined that Attorney Gonzalez’s prior representation of Daniel would not present an actual conflict of interest at trial. He contends that because Attorney Gonzales had recently represented Daniel and had discussed the present case with Daniel’s wife, the district court should have held a Garcia hearing to determine whether Attorney Gonzalez had a conflict of interest and whether that conflict would prejudice Hernandez. Hernandez further asserts that Attorney Gonzalez’s failure to call Daniel as a witness provides evidence of a conflict of interest; he maintains that because Daniel was the only witness who could corroborate Hernandez’s defense, the only explanations for Gonzalez’s decision not to call Daniel were (1) the existence of a conflict of interest and (2) the district court’s warning to Gonzalez not to take advantage of his prior representation of Daniel. Accordingly, Hernandez asks us to remand proceedings to the district court so that it can conduct a Garcia hearing to determine whether the conflict adversely affected Attorney Gonzalez’s performance at trial.
“The Sixth Amendment right to counsel includes the ‘right to representation that is free from any conflict of interest.’ ” United States v. Garcia-Jasso, 472 F.3d 239, 243 (5th Cir.2006) (quoting United States v. Vaquero, 997 F.2d 78, 89 (5th Cir.1993)). “As a general rule, a conflict exists when defense counsel allows a situation to arise that tempts a division in counsel’s loyalties.” United States v. Burns, 526 F,3d 852, 856 (5th Cir.2008) (citing Garcia-Jasso, 472 F.3d at 243). “If a defendant chooses to proceed with representation by counsel who has a conflict of interest, a district court must conduct what is commonly known as a ‘Garcia hearing’ to ensure a valid waiver by the defendant of his Sixth Amendment right.” Garcia-Jasso, 472 F.3d at 243 (citing Garcia, 517 F.2d at 278). However, a district court only needs to “conduct a Garcia hearing if there is an actual conflict of interest,” id. (citation omitted), as opposed to “ ‘a specu *619 lative or potential’ conflict.” Burns, 526 F.3d at 856 (quoting United States v. Infante, 404 F.3d 376, 391 (5th Cir.2005)). A district court’s determination that an actual conflict did not exist is a mixed question of law and fact, which we review de novo. Id. (citations omitted).
To determine whether Attorney Gonzalez had an actual conflict of interest, “we must ask whether Attorney [Gonzalez] labored under a conflict of interest, which was not merely hypothetical, and whether that conflict adversely affected the representation (i.e., whether it was an actual conflict).” Id. at 392 (citations omitted). Because Hernandez concedes that there is insufficient evidence in the record to determine whether the alleged conflict adversely affected Attorney Gonzalez’s representation, we need only decide whether the alleged conflict was not merely hypothetical. Id.
“Joint representation does not necessarily create a conflict of interest.” United States v. Rico, 51 F.3d 495, 508 (5th Cir.1995). In such situations a non-hypothetical conflict only exists “when defense counsel is compelled to compromise his or her duty of loyalty or zealous advocacy to the accused by choosing between or blending the divergent or competing interests of a former or current client.” Perillo v. Johnson, 205 F.3d 775, 781 (5th Cir.2000) (citations omitted). Deciding “whether a disqualifying conflict exists is highly fact-dependent.” Burns, 526 F.3d at 856 (citation omitted). We have found that this determination depends on a number of factors, “including, ... whether the attorney has confidential information that is helpful to one client but harmful to another; whether and how closely the subject matter of the multiple representations is related; how close in time the multiple representations are related; and whether the prior representation has been unambiguously terminated.” Infante, 404 F.3d at 392 (citing Perillo, 205 F.3d at 798-99).
We hold that the conflict here remained purely hypothetical. Burns, 526 F.3d at 857. First, Attorney Gonzalez represented to the district court that he did not learn any confidential information from his brief representation of Daniel in an unrelated state felony proceeding. While Hernandez asserts that it was unreasonable for the district court to credit Attorney Gonzalez’s representations, the district court reasonably found them credible due to the brevity of his prior representation and the fact that the two proceedings were unrelated. See Perillo, 205 F.3d at 799 (“Where, however, defense counsel’s involvement in the prior representation was either transient or insubstantial, we have been less inclined to find an actual conflict.”) (citation omitted). Further, although Attorney Gonzalez’s two relevant representations were close in time, his representation of Daniel had unambiguously ended before his representation of Hernandez began. Id. at 798-799 (‘Where ... defense counsel’s pri- or representation unambiguously terminated before the second representation began, the possibility that defense counsel’s continuing obligation to his former client will impede his representation of his current client is generally much lower.”) (citation omitted).
Hernandez contends that Attorney Gonzalez’s decision not to call Daniel as a witness supports his assertion that Gonzalez’s prior representation of Daniel created a conflict of interest. At the hearing on the Government’s motion to disqualify, the Government argued that Hernandez might want to call Daniel to testify regarding a statement he made to an investigator before he eventually pleaded guilty. In the earlier statement, Daniel said that the brothers had always planned simply to steal the money from the confidential *620 source — a statement that could have been used to support Hernandez’s defense that the brothers never conspired to sell cocaine. However, given the foregoing, the record does not support Hernandez’s contention that Attorney Gonzalez refrained from calling Daniel to testify because of the alleged conflict. That is, “[t]here is nothing to indicate that the failure [to call Daniel] was the result of ... ‘divided loyalties’ which would result in an actual conflict as opposed to a tactical trial strategy.” Burns, 526 F.3d at 857.
Accordingly, because Hernandez did not establish that Attorney Gonzales labored under a non-hypothetical conflict of interest, “we conclude that the district court did not err in failing to conduct a Garcia hearing.” Garcia-Jasso, 472 F.3d at 245; see id. (holding that attorney did not have an actual conflict of interest because appellant’s claims “rely on speculation and inferences that are unsupported by the record”).
B
Second, Hernandez claims that the district court committed plain error when it calculated his total adjusted offense level under the Sentencing Guidelines. He asserts that the district court erroneously increased his offense level by employing a one-level multi-count adjustment pursuant to U.S.S.G. § 3D1.4. He contends that the district court’s error increased his offense level from 28 to 29, which, when combined with his criminal history category, increased his advisory Guidelines range of imprisonment from 87-108 months to 97-121 months. The district court adopted the PSR, found no reason to depart from the Guidelines range, and sentenced Hernandez to concurrent 120-month terms of imprisonment.
Because Hernandez did not object to the district court’s multi-count adjustment in the district court, we review his claim for plain error. To show reversible plain error, Hernandez must show a clear or obvious error that affects his substantial rights. Puckett v. United States, 556 U.S. 129, 135, 129 S.Ct. 1423, 173 L.Ed.2d 266 (2009). If he makes that showing, we have discretion to correct the error but only if it seriously affects the fairness, integrity, or public reputation of judicial proceedings. Id.
Hernandez claims that the district court committed clear error that affected his substantial rights by sentencing him to a term of imprisonment 12 months above the top-end of the proper Guidelines range. Further, he claims that the district court’s error seriously affected the fairness, integrity, or public reputation of the judicial proceedings because the court intended to give him a sentence within the Guidelines range, but due to the court’s error, gave him a sentence one year above the top-end of the correct Guidelines range.
As the Government concedes, the district court committed clear error by employing a one-level multi-count adjustment to Hernandez’s total offense level pursuant to U.S.S.G. § 3D1.4. Hernandez was clearly not eligible for a multi-count adjustment under § 3D1.4 because his theft of government money offense was “9 or more levels less serious” than his cocaine conspiracy offense. See U.S.S.G. § 3D1.4(c) (providing that courts should “disregard [offenses that are] 9 or more levels less serious than the Group with the highest offense levels” for the purposes of employing a multi-count adjustment); see also United States v. Villegas, 404 F.3d 355, 364 (5th Cir.2005) (holding that district court committed clear error by committing an obvious error that caused it to impose a sentence that resulted from its incorrect application of the Guidelines).
*621 In order to establish that his substantial rights were affected by this error, Hernandez must “show a reasonable probability that, but for the district court’s misapplication of the Guidelines, he would have received a lesser sentence.” United States v. Villegas, 404 F.3d 355, 364 (5th Cir.2005) (per curiam).[2] “[A]bsent additional evidence, a defendant has shown a reasonable probability that he would have received a lesser sentence when (1) the district court mistakenly calculates the wrong Guidelines range, (2) the incorrect range is significantly higher than the true Guidelines range, and (3) the defendant is sentenced within the incorrect range.” United States v. Mudekunye, 646 F.3d 281, 289 (5th Cir.2011) (per curiam) (citations omitted).
In Mudekunye, we held that in cases where the correct and incorrect Guidelines ranges overlap, but the court imposes a sentence significantly above the top-end of the correct Guidelines range, the imposed sentence affects the defendant’s substantial rights “where it is not apparent from the record that [the defendant] would have received an above-Guidelines sentence.” 646 F.3d at 290 (quoting United States v. John, 597 F.3d 263, 285 (5th Cir.2010)).
Here, similarly to Mudekunye, the correct and incorrect Guidelines ranges overlapped by 11 months, and the district court imposed a sentence 12 months higher than the top-end of the correct Guidelines range. Id. (holding that the district court’s misapplication of the Guidelines affected the defendant’s substantial rights where the “correct and incorrect sentencing ranges overlapped] by one month, [and the defendant] was sentenced well outside the one month overlap, 19 months above the correct range”); see United States v. Carrizales-Jaramillo, 303 Fed.Appx. 215, 217 (5th Cir.2008) (per curiam) (vacating sentence on plain error review where the correct and incorrect Guidelines ranges overlapped by one month and the court imposed a sentence one month higher than the overlap); cf. Gaither, 434 Fed. Appx. at 393-94 (holding that Guidelines error did not warrant vacatur of defendant’s sentence on plain error review where correct and incorrect Guidelines ranges overlapped by two months and the court imposed a sentence six months higher than the overlap).
Further, as in Mudekunye, there is no evidence in the record that suggests the district court would have imposed an above-Guidelines sentence of 120 months if the district court had considered the accu-. rate Guidelines range — 87-108 months. Mudekunye, 646 F.3d at 290 (citing John, 597 F.3d at 285). The district court merely adopted the PSR and found no reason to depart from the Guidelines range.
Although the correct and erroneous Guidelines ranges overlapped more significantly here than they did in Mudekunye, we find its reasoning persuasive. In short, given (1) the substantial, 12-month disparity between the top-end of the correct Guidelines range and the sentence imposed and (2) the lack of any indication in the record that the district court would have imposed an above-Guidelines sentence if it had considered the correct range, we conclude that Hernandez has shown a reasonable probability “that, but for the district court’s misapplication of the Guidelines, he would have received a lesser sentence.” Villegas, 404 F.3d at 364. Therefore, he has demonstrated that the district court’s *622 error affected his substantial rights. Mudekunye, 646 F.3d at 291.[3]
Because we have determined that Hernandez has satisfied the first three elements of plain error, wé must decide whether to exercise our discretion to remand for resentencing. We may only exercise our discretion to correct the district court’s plain error if it “seriously affectfs] the fairness, integrity or public reputation of judicial proceedings.” Puckett, 556 U.S. at 135, 129- S.Ct. 1423. “[U]ltimately, whether a sentencing error seriously affects the fairness, integrity, or.public reputation of judicial proceedings is dependent upon the degree of the error and the particular facts of the case.” John, 597 F.3d at 288.
Although we have been “generous with remand” when employing the fourth prong of the plain error test in the sentencing context, “we are not convinced that the case law on this point is settled or as categorical as language in some cases might make it seem.” United States v. Ellis, 564 F.3d 370, 378 & n. 44. (5th Cir. 2009) (collecting cases). We are also mindful of “our precedent declining ‘to adopt a blanket rule that once prejudice is found under the [third plain error prong], the error invariably requires correction.’ ” United States v. Escalante-Reyes, 689 F.3d 415, at 425-26, 2012 WL 3024195, at *7 (5th Cir.2012) (en banc) (alteration in original) (quoting United States v. Reyna, 358 F.3d 344, 352 (5th Cir.2004) (en banc)).
Nonetheless, as in Mudekunye, we conclude that under the particular facts of this case, “[t]he substantial disparity between the imposed sentence and the applicable Guidelines range warrants the exercise of our discretion to correct the error.” 646 F.3d at 291; see John, 597 F.3d at 289 (holding that it is appropriate to exercise our discretion to vacate and remand for resentencing “when there is no indication that the district court would have selected the sentence regardless of the applicable Guidelines range, and the sentence imposed is based on an erroneously calculated Guidelines range, ... at least when the sentence is materially or substantially above the properly calculated range”). Moreover, the district court’s error was particularly obvious, involving a straightforward misapplication of the plain language of the Guidelines. Cf. John, 597 F.3d at 290 (Smith J, dissenting) (“The panel majority declares this forfeited error to be ‘plain,’ although it takes five manuscript pages to explain why it was error at all.”). Lastly, even though the record of Hernandez’s offense contains some aggravating elements, those elements do not persuade us to refrain from exercising our discretion to remand for resentencing under the particular facts of this case. Cf. Gaither, 434 Fed.Appx. at 394 (holding that offense did not warrant remediation where record showed it “involv[ed] domestic violence, drugs, and a firearm; a leadership role within a violent gang; and pending charges for possessing a deadly weapon while in prison”) (citations omitted).
Ill
We AFFIRM Hernandez’s convictions. For the reasons stated above, we VACATE Hernandez’s sentence and REMAND for further proceedings.

. The grand jury later returned a superseding indictment that did not contain any substantive changes.

. "As noted recently, our court has not fully resolved whether a different substantial-rights standard also remains in effect, i.e., 'if the case were remanded, the trial judge could reinstate the same sentence.' " United States v. Gaither, 434 Fed.Appx. 393 (5th Cir.2011) (per curiam) (citation omitted).

. We take no position regarding the point at which a sentence becomes materially or substantially above the proper Guidelines range. See John, 597 F.3d at 289. We also take no position regarding whether additional overlap between the correct and incorrect Guidelines ranges would affect our analysis. See United States v. Price, 516 F.3d 285, 289 n. 28 (5th Cir.2008).