# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
February 7, 2013

No. 11-50908

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff – Appellee

v.

CARLOS FLORES OLMOS,

Defendant – Appellant

Appeals from the United States District Court
for the Western District of Texas
USDC No. 3:11-CR-1233

Before WIENER, CLEMENT, and PRADO, Circuit Judges.

PER CURIAM:[*]

Carlos Flores Olmos appeals his drug trafficking conviction and sentence on the ground that the district court erred in failing to inquire as to a purported conflict of interest that arose between him and his defense counsel. We AFFIRM.

## FACTS AND PROCEEDINGS

On May 4, 2011, Olmos was arrested at a checkpoint in El Paso, Texas, after the car he was driving was found to contain approximately twenty-five

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

pounds of cocaine, wrapped in kilogram bundles and hidden in a non-factory-installed compartment. The district court appointed a federal public defender to represent Olmos, but a retained attorney, Francisco Macias, entered an appearance and successfully moved to substitute himself as counsel shortly thereafter.

Olmos was charged by indictment with importing into the United States and possessing with the intent to distribute five kilograms or more of a substance containing cocaine. On June 24, Olmos entered into a plea agreement, pleading guilty to the importation charge in return for the Government moving to dismiss the possession charge. The Government also agreed not to oppose a "safety valve" downward reduction pursuant to U.S. Sentencing Guidelines Manual §§ 2D1.1(b)(16), 5C1.2 at sentencing so long as Olmos provided truthful information about his offenses. The district court accepted Olmos's plea on July 13.

Olmos's sentencing was scheduled to occur on September 15. On that day, however, Macias requested a continuance on the ground that there had been difficulties with the safety valve disclosure process. The district court granted a brief continuance, and sentencing recommenced on September 19. At sentencing, the Government informed the court that it did not believe that Olmos had been sufficiently honest and forthcoming to qualify for safety valve treatment and that, over the course of three interviews, he had given various explanations for his actions that the Government considered incredible. The Government also noted "that prior to Mr. Macias getting there, [Olmos] inquired about who had hired Mr. Macias. And we told him we didn't know, but if he was concerned about Mr. Macias, that we would be happy to relay that information to the Court." During the course of further questioning by the court, the Government detailed a few instances in which the issue of Macias's

representation of Olmos had arisen in the context of safety valve meetings between Olmos and the Government.

The court then questioned Macias directly. Macias disclosed that he had been retained by a third party known to him only as "El Sobrino," who several times a year would send Macias $3,000 in cash along with the name of a defendant for him to represent. Macias stated that he never had any other contact with El Sobrino and that his practice was to withdraw in the event a conflict arose in the course of these representations.

The district court proceeded to question Olmos. Olmos denied knowing anyone known by the sobriquet "El Sobrino" and told the court that Macias had failed to tell him the identity of the man who had retained him. Olmos stated that he never asked Macias to leave the room during his safety valve debriefings because he "feared that would lend itself to misinterpretation" and that he "was worried about the situation." The district court then asked Olmos whether Macias's presence had affected his "ability to tell the truth," to which Olmos responded in the negative, and whether the declarations he had given to the Government, which the Government had not found credible, were truthful. Olmos replied that they had been.

After hearing further argument from the parties as to whether Olmos qualified for safety valve treatment, the district court denied a safety valve reduction and sentenced Olmos to the statutory mandatory minimum of ten years' imprisonment. One day after Olmos's final judgment was entered, Macias moved to withdraw as counsel, stating that "Defense Counsel and Defendant have developed a conflict . . . which cannot be resolved [and which] reaches Constitutional proportions." The district court granted Macias leave to withdraw and appointed Olmos new counsel. Olmos now appeals.

## STANDARD OF REVIEW

No. 11-50908

"The determinations whether a conflict existed and whether the conflict had an adverse effect [on counsel's performance] are mixed questions of law and fact, which we review de novo." *United States v. Infante*, 404 F.3d 376, 391 (5th Cir. 2005).

## DISCUSSION

On appeal, Olmos contends that, on learning that Macias had been retained by a third party, the district court erred in not inquiring of Olmos as to whether he was waiving his right to conflict-free counsel, in accordance with *United States v. Garcia*, 517 F.2d 272, 278 (5th Cir. 1975). "The Sixth Amendment right to counsel includes the 'right to representation that is free from any conflict of interest.'" *United States v. Garcia–Jasso*, 472 F.3d 239, 243 (5th Cir. 2006) (quoting *United States v. Vaquero*, 997 F.2d 78, 89 (5th Cir. 1993)). "As a general rule, a conflict exists when defense counsel allows a situation to arise that tempts a division in counsel's loyalties." *United States v. Hernandez*, 690 F.3d 613, 618 (5th Cir. 2012) (quoting *United States v. Burns*, 526 F.3d 852, 856 (5th Cir. 2008)).

In order for a defendant to be represented by conflicted counsel, "a district court must conduct what is commonly known as a '*Garcia* hearing' to ensure a valid waiver by the defendant of his Sixth Amendment right." *Garcia–Jasso*, 472 F.3d at 243 (citing *Garcia*, 517 F.2d at 278). At such a hearing, "the district court must 'ensure that the defendant (1) is aware that a conflict of interest exists; (2) realizes the potential hazards to his defense by continuing with such counsel under the onus of a conflict; and (3) is aware of his right to obtain other counsel.'" *Id.* (quoting *United States v. Greig*, 967 F.2d 1018, 1022 (5th Cir. 1992)). Significantly, though, "[a] defendant must show more than a speculative or potential conflict." *Id.* "A district court need only conduct a *Garcia* hearing if there is an *actual* conflict of interest." *Id.* (emphasis added).

4

No. 11-50908

Olmos argues that Macias had an actual conflict and that a *Garcia* hearing was required because Macias was retained by El Sobrino, and there are "inherent dangers that arise when a criminal defendant is represented by a lawyer hired and paid by a third party, particularly when the third party is the operator of the alleged criminal enterprise." *Wood v. Georgia*, 450 U.S. 261, 268–69 (1981). Notwithstanding the Supreme Court's opinion in *Wood*, however, the mere fact that Macias was retained by a third party does not necessarily mean that he was conflicted, and "[t]here is no requirement that [a *Garcia* hearing] be held simply because the cost of a defendant's legal fees have been assumed by another person. . . . In drug cases, it is not uncommon for a third party to pay the legal fees of the defendants. A conflict of interest does not automatically arise from such arrangements." *United States v. Carpenter*, 769 F.2d 258, 263 (5th Cir. 1985) (citation omitted).

Olmos has advanced no argument for why Macias was actually conflicted in his representation other than his being paid by a third party and innuendo with respect to Macias's rather strange business relationship with El Sobrino. In light of Macias's consistent denials that El Sobrino in any way directed his representation of Olmos or was in any way involved in Olmos's case beyond the initial up-front payment, we fail to see how this is not merely a case of "the cost of a defendant's legal fees [being] assumed by another person." *Id.* Given the absence of more than a "speculative or potential conflict," *Garcia–Jasso*, 472 F.3d at 243, a *Garcia* hearing was not necessary.

## CONCLUSION

For the foregoing reasons, we AFFIRM.