# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 13-51062
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**

March 30, 2015

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

FRANCISCO FRANK APODACA, JR.,

Defendant-Appellant

Appeal from the United States District Court
for the Western District of Texas
USDC No. 3:10-CR-2284-1

Before PRADO, OWEN, and GRAVES, Circuit Judges.

PER CURIAM:[*]

A grand jury indicted Francisco Frank Apodaca, Jr., on seven counts related to his role in a scheme to pay bribes and kickbacks to government officials in El Paso, Texas, in order to secure favorable treatment and contracts for his employer, Access Healthsource Incorporated, which provided healthcare services to local governments. Larry Medina, who had been a County Commissioner in El Paso, was charged in three of the counts. Both eventually

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 13-51062

pleaded guilty to a single count—Apodaca to conspiring to commit racketeering, and Medina to conspiring to commit mail fraud. Apodaca received a 96-month prison sentence to be followed by three years of supervised release and was ordered to pay a total of $6,819,723.87 in restitution, including $433,103.11 to El Paso County. Apodaca now appeals, contending that one of the two attorneys who represented him in the district court, Ray Velarde, operated under a conflict of interest because he had previously represented Medina during the same proceedings. Apodaca also argues that the district court erred in not recognizing the conflict and holding a hearing pursuant to *United States v. Garcia*, 517 F.2d 272, 278 (5th Cir. 1975), *abrogated on other grounds by Flanagan v. United States*, 465 U.S. 259, 263 & n.2 (1984).

Apodaca, through his co-counsel, Ken Del Valle, could have raised the issue in a timely manner in the district court but failed to do so. *See United States v. Rodriguez*, 602 F.3d 346, 351 (5th Cir. 2010). Indeed, mere days after Velarde was appointed to represent Apodaca, Del Valle asked the district court to consider whether Velarde's representation of a defendant in a separate proceeding resulted in a conflict of interest. Apodaca, though, waited until after the judgment was entered and the notice of appeal was filed to bring the issue of Velarde's potential conflict of interest based on his prior representation of Medina to the attention of the district court in a motion for a new trial, but by that time, the district court lacked jurisdiction to consider it. *See United States v. Green*, 882 F.2d 999, 1001 (5th Cir. 1989). Apodaca has forfeited any error, and so our review is for plain error only. *See Rodriguez*, 602 F.3d at 351.

The Sixth Amendment guarantee of the right to counsel includes the right to legal representation free of conflicts of interest. *United States v. Hernandez*, 690 F.3d 613, 618 (5th Cir. 2012). A conflict exists where "counsel places himself in a position conducive to divided loyalties." *United States v.*

No. 13-51062

*Garcia-Jasso*, 472 F.3d 239, 243 (5th Cir. 2006) (internal quotation marks and citation omitted). To establish that counsel labored under a conflict of interest, a defendant must show an actual conflict that adversely affected the representation; it is insufficient to show a hypothetical, speculative, or potential conflict. *Hernandez*, 690 F.3d at 619; *Garcia-Jasso*, 472 F.3d at 243. An attorney's performance was adversely affected by a conflict of interest where counsel could have pursued a plausible alternative defense strategy or tactic but chose not to do so because of the conflict. *Perillo v. Johnson*, 205 F.3d 775, 781 (5th Cir. 2000). A conflict is not automatically created where an attorney engages in joint representation. *Hernandez*, 690 F.3d at 619. An actual conflict exists only where the attorney must compromise his duty of loyalty or zealous advocacy to the defendant by choosing between or blending the competing interests of the defendant and the former client. *Id.*

Velarde represented Medina for only four months at the beginning of the proceedings and terminated his representation of Medina nearly 15 months before he was appointed to represent Apodaca. Further, Apodaca does not allege that Velarde learned any confidential information that was helpful to Medina but harmful to Apodaca. These factors weigh against the existence of a conflict of interest. *See id*; *Perillo*, 205 F.3d at 798-99.

In an attempt to show an actual conflict, Apodaca points to the Government's disclosure that it sought to use the same audio recordings against both Apodaca and Medina, positing that the recordings were of a conversation between Apodaca and Medina and that Medina knew that this conversation was being recorded. Apodaca suggests that Velarde's knowledge that he would have to cross-examine Medina affected the decision that Apodaca would plead guilty and not proceed to trial. It is unclear when Velarde first learned of these recordings. In any event, Apodaca provides no evidence as to

their content or support for his contention that Medina and Apodaca were directly involved with one another. The Government's disclosure document describes the recordings as "consensual" and explains that they were "regarding" Medina but does not say who the parties to the conversation were. Thus, Apodaca's theory that Medina recorded a conversation with him is speculative at best. Even more speculative is his assertion that the contents of the recordings pitted his interests against Medina's and caused Velarde to choose between them such that Velarde's judgment about whether Apodaca should proceed to trial was compromised. As we have emphasized, a defendant cannot use speculation and inferences that are unsupported by the record to establish an actual conflict of interest. *Garcia-Jasso*, 472 F.3d at 245.

Finally, Apodaca asserts that Velarde's decision not to object to the calculation of the restitution that Apodaca owed to El Paso County was the result of his divided loyalties. In Apodaca's view, if Velarde had objected, he would have been compelled to emphasize Medina's culpability over Apodaca's. Here again, Apodaca provides no support for his position that Velarde's decision was affected by his prior representation of Medina. In the plea agreement, Apodaca agreed that he would pay restitution in the amount established by the probation officer. In the presentence report (PSR), the probation officer noted that Medina had been ordered to pay restitution to the county in the amount of his salary and offset Apodaca's restitution by the amount that Medina had been ordered to pay. Apodaca puts forward no specific argument that Velarde could have raised that would have reduced Apodaca's restitution liability but increased Medina's even further. Indeed, the district court emphasized that the restitution calculated in the PSR was only a fraction of the true losses suffered by the victims and did not account for

losses sustained by families, which easily amounted to tens of millions of dollars.

Apodaca asks us to make inferences outside of the record that Velarde was forced to decide between representing Apodaca zealously and advancing the competing interests of Medina, but he points to no evidence of an actual conflict. *See Garcia-Jasso*, 472 F.3d at 244. He presents no plausible defense strategy or tactic that was rejected by Velarde. *See Perillo*, 205 F.3d at 781. His speculation and unsupported inferences do not establish an actual conflict. *See Garcia-Jasso*, 472 F.3d at 245. Apodaca has shown no error, plain or otherwise. Because Apodaca has not established that Velarde had an actual conflict of interest, he was not entitled to a *Garcia* hearing. *See Hernandez*, 690 F.3d at 620.

Accordingly, the district court's judgment is AFFIRMED.