# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

February 11, 2025

Lyle W. Cayce
Clerk

No. 21-51156

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

LUIS IRAM MIRANDA,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 3:20-CR-1797-2

Before RICHMAN, SOUTHWICK, and OLDHAM, *Circuit Judges*.

PER CURIAM:*

Luis Iram Miranda was convicted of conspiracy to possess with intent to distribute 500 grams or more of a mixture containing methamphetamine and possession with intent to distribute 500 grams or more of a mixture containing methamphetamine. Miranda pleaded not guilty while his co-defendant, Martin Rivera-Fuentes, entered into a plea agreement and agreed to testify against Miranda at trial. Before trial, the Government requested

---

* This opinion is not designated for publication. *See* 5TH CIR. R. 47.5.

No. 21-51156

that the district court conduct a *Garcia*[1] hearing for the purpose of informing Miranda that his counsel, Francisco Macias, had a potential conflict of interest due to having previously represented Rivera-Fuentes in a marijuana possession and trafficking case. Miranda responded to the Government's motion by waiving his right to conflict-free counsel. On the first day of trial, the district court asked Miranda if he was aware of the potential conflict, if he was aware he had the right to conflict-free counsel, and if he waived his right to conflict-free counsel in proceeding with Macias. Miranda responded affirmatively to all of these questions. After the jury convicted Miranda on both counts, he filed a motion for reconsideration of his waiver of his right to conflict-free counsel, which the district court denied, finding Miranda's waiver was knowing and voluntary. On appeal, Miranda argues that this court should vacate his convictions because the district court erred in failing to conduct a *Garcia* hearing and, as a consequence, his waiver was not knowing and voluntary. Miranda also argues that the district court erred in denying his motion to reconsider his waiver. Because Miranda had not shown that Macias labored under an actual conflict of interest, the district court was not required to conduct a *Garcia* hearing, and we therefore affirm.

# I

Miranda and his co-defendant, Rivera-Fuentes, were charged under 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A)(viii) with conspiracy to possess with intent to distribute 500 grams or more of a mixture containing methamphetamine, and under 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(viii) for possession with intent to distribute 500 grams or more of a mixture

---

[1] *United States v. Garcia*, 517 F.2d 272 (5th Cir. 1975), *abrogated on other grounds by Flanagan v. United States*, 465 U.S. 259, 263 n.2 (1984).

No. 21-51156

containing methamphetamine. Rivera-Fuentes entered a guilty plea, while Miranda pleaded not guilty. The Government intended to call Rivera-Fuentes to testify against Miranda at trial.

One month before trial, the Government filed a motion asking the district court to conduct a hearing pursuant to *Garcia*[2] for the purpose of advising Miranda of a potential conflict of interest between Miranda and his trial counsel, Francisco Macias. In its motion, the Government stated it intended to call Rivera-Fuentes as a witness, and that Macias previously represented Rivera-Fuentes in 2008 in a case involving marijuana importation in violation of 21 U.S.C. § 952(a) and marijuana possession in violation of § 841(a)(1), in which Rivera-Fuentes entered into a plea agreement and pleaded guilty to the first count for marijuana importation. In addition, the Government advised the district court that Macias previously represented the husband of a potential witness—Rivera-Fuentes's sister. Because of those prior representations, the Government asked the district court to conduct the hearing to ensure Miranda knew of the potential conflict and, if Miranda still wished to proceed with Macias, to determine whether Miranda knowingly, intelligently, and voluntarily waived his right to conflict-free counsel. Two weeks later, Luis Yanez filed an entry of appearance of co-counsel for the defense. Miranda then filed a response to the Government's motion and an affidavit acknowledging he was aware Macias had previously represented Rivera-Fuentes and that, if a conflict existed, Miranda knowingly, voluntarily, and intelligently asserted his right to waive that conflict. The district court then entered an order that Macias remain Miranda's counsel of record.

_____

[2] *United States v. Garcia*, 517 F.2d 272 (5th Cir. 1975), *abrogated on other grounds by Flanagan v. United States*, 465 U.S. 259, 263 n.2 (1984).

No. 21-51156

On the first day of trial, the district court held a status hearing addressing the Government's motion.  The district court asked Miranda if he was aware Macias had a potential conflict, if he was aware he had the right to conflict-free counsel, and if he waived his right to conflict-free counsel in continuing with Macias.  Miranda responded "yes" to each of the questions.  During Miranda's trial, Macias presented the defense's opening statement, conducted voir dire, cross-examined the case agent, and presented testimony of the sole defense witness.  Co-counsel Yanez cross-examined Rivera-Fuentes and a forensic chemist and also made objections throughout trial.  Both made closing arguments.

At the end of trial, the jury found Miranda guilty on both counts alleged in the indictment.  Five days before sentencing, Miranda filed a motion for reconsideration of the district court's order accepting Miranda's conflict waiver, arguing Macias's conflict was not waivable and the district court was required but failed to hold a *Garcia* hearing.  The district court sentenced Miranda to eighty-seven months of imprisonment and four years of supervised release.  Miranda filed a timely notice of appeal.  The district court then entered an order denying Miranda's motion to reconsider, declining to determine whether an actual conflict existed but finding that the potential conflict was waivable, that Miranda waived the potential conflict, and that the waiver was knowing, voluntary, and intelligent.

## II

We address whether Macias labored under an actual, as opposed to potential, conflict.  "Whether counsel labored under an actual conflict is a mixed question of fact and law that we review de novo,"[3] and a district

---

[3] *United States v. Preston*, 659 F. App'x 169, 179 (5th Cir. 2016) (unpublished) (citing *United States v. Burns*, 526 F.3d 852, 856 (5th Cir. 2008)).

No. 21-51156

court's decision not to hold an evidentiary hearing into an alleged conflict of interest is reviewed for abuse of discretion.[4]

Miranda argues there was an actual conflict of interest because his defense counsel, Macias, due to his prior representation of Rivera-Fuentes, did not participate in the cross-examination of Rivera-Fuentes as a witness and, instead, allowed co-counsel Yanez to question the witness. Miranda contends that "Rivera-Fuentes's testimony against [him] constituted a major part of the Government's case-in-chief" and that Macias's lack of participation gave Rivera-Fuentes "a free pass to testify." Miranda argues the addition of co-counsel Yanez "hurt Miranda's defense" because Macias "sat himself out of the most important part of the Government's case." Miranda argues that he would not have waived this conflict if he had full knowledge of the conflict and its impact on his defense. The Government argues there was no actual conflict and, as a result, the district court was not required to hold a *Garcia* hearing. The Government maintains that Macias's former client testifying against his current client did not create an actual conflict because the prior offense did not involve Miranda or the same controlled substance.

"The representation to which a defendant is entitled under the Sixth Amendment of the Constitution must be free from any conflict of interest."[5] "To establish a Sixth Amendment violation on the basis of a conflict of interest the defendant must demonstrate: (1) that his counsel acted under the influence of an actual conflict; and (2) that the conflict adversely affected his

---

[4] *United States v. Reagan*, 725 F.3d 471, 487 (5th Cir. 2013) (citing *United States v. Garza*, 429 F.3d 165, 171 (5th Cir. 2005) (per curiam)).

[5] *United States v. Burns*, 526 F.3d 852, 856 (5th Cir. 2008) (citing *United States v. Garcia-Jasso*, 472 F.3d 239, 243 (5th Cir. 2006)).

performance at trial."[6]  A defendant may choose to proceed with counsel who has such a conflict if, following a *Garcia* hearing, the defendant validly waives his constitutional right to conflict-free representation.[7]  In a *Garcia* hearing, the district court must "ensure that the defendant (1) is aware that a conflict of interest exists; (2) realizes the potential hazards to his defense by continuing with such counsel under the onus of a conflict; and (3) is aware of his right to obtain other counsel."[8]  However, "[a] district court need only conduct a *Garcia* hearing if there is an actual conflict of interest."[9]

"Only if counsel had to choose between 'the divergent or competing interests of a former or current client' is there an actual conflict."[10]  "This question is highly fact-sensitive,"[11] and "[w]hether a conflict of interest exists depends on a number of factors, including, but not limited to, whether the attorney has confidential information that is helpful to one client but harmful to another; whether and how closely the subject matter of the multiple representations is related; how close in time the multiple representations are related; and whether the prior representation has been unambiguously terminated."[12]  "Also relevant are the 'character and extent

---

[6] *Id.* (citing *United States v. Culverhouse*, 507 F.3d 888, 892 (5th Cir. 2007)).

[7] *United States v. Brown*, 553 F.3d 768, 799 (5th Cir. 2008).

[8] *Garcia-Jasso*, 472 F.3d at 243 (quoting *United States v. Greig*, 967 F.2d 1018, 1022 (5th Cir. 1992)).

[9] *Id.* (citing *United States v. Carpenter*, 769 F.2d 258, 263 (5th Cir. 1985)).

[10] *Burns*, 526 F.3d at 856 (quoting *Garcia–Jasso*, 472 F.3d at 243); *see United States v. Infante*, 404 F.3d 376, 392 (5th Cir. 2005) ("A conflict [of interest] exists when defense counsel places himself in a position conducive to divided loyalties." (alteration in original) (quoting *United States v. Medina*, 161 F.3d 867, 870 n.1 (5th Cir. 1998))).

[11] *Infante*, 404 F.3d at 392 (citing *Perillo v. Johnson*, 205 F.3d 775, 798-99 (5th Cir. 2000)).

[12] *Id.* (citing *Perillo*, 205 F.3d at 798-99).

of the prior representation'"[13] and "whether counsel demonstrates 'an abundance of caution' by allowing co-counsel to cross-examine the prior client."[14]  However, even if the affected counsel cross-examines the prior client, "the defendant must show more than that his attorney [merely] cross-examined a former client before a hypothetical conflict will be considered an actual one."[15]  Ultimately, "[t]here must be an 'actual' conflict and not 'a speculative or potential' conflict,"[16] and the defendant must show "there was some plausible alternative defense strategy that could have been pursued, but was not, because of the actual conflict."[17]

In *United States v. Burns*,[18] this court concluded defense counsel did not labor under an actual conflict, even though that counsel represented a witness called by the government in a proceeding four years prior to trial.[19] In that case, we concluded, based on the factors enumerated above, that the conflict remained "purely hypothetical."[20]  We explained that the affected counsel's representation of his prior client had been "unequivocally terminated"; that "the facts and issues of the previous representation had no

---

[13] *United States v. Preston*, 659 F. App'x 169, 179 (5th Cir. 2016) (unpublished) (quoting *Perillo*, 205 F.3d at 799).

[14] *Id.* (quoting *Burns*, 526 F.3d at 857).

[15] *Burns*, 526 F.3d at 856 (citing *Perillo*, 205 F.3d at 801-02).

[16] *Id.* (citing *Infante*, 404 F.3d at 391).

[17] *Id.* (quoting *Infante*, 404 F.3d at 393); *see United States v. Garcia-Jasso*, 472 F.3d 239, 243 (5th Cir. 2006) ("It must be demonstrated that the attorney made a choice between possible alternative courses of action . . . . If he did not make such a choice, the conflict remained hypothetical." (quoting *Stevenson v. Newsome*, 774 F.2d 1558, 1561-62 (11th Cir. 1985))).

[18] 526 F.3d 852 (5th Cir. 2008).

[19] *Id.* at 856-57 (citing *Infante*, 404 F.3d at 392).

[20] *Id.* at 857.

relation to the charges brought against [counsel's current client]"; that counsel had "very limited contact with the former client" and, in those contacts, did not discuss matters of the current case; and that, "out of an abundance of caution, the affected attorney's co-counsel cross-examined the witness."[21] We also noted that the defendant failed to show "there was some plausible alternative defense strategy that could have been pursued, but was not, because of the actual conflict."[22] We concluded that although the defendant asserted that his counsel refrained from a certain line of inquiry because of the alleged conflict, the record did not support such a contention. Instead, the record demonstrated that counsel "challenged the witness'[s] credibility at length in an attempt to demonstrate that the witness really did not know [the defendant], and was testifying to obtain favorable treatment from the Government."[23] We concluded, based on the facts in the record, that "[t]here [wa]s nothing to indicate that the failure to [pursue the line of inquiry] was the result of the 'divided loyalties' which would result in an actual conflict as opposed to a tactical trial strategy."[24]

The record in the present case is similar. The record evinces that the subject matters of Miranda's and Rivera-Fuentes's cases were not related. There is no allegation made, and no record evidence to suggest, that Miranda was involved in any way in Rivera-Fuentes's prior case, and here, the charges involve conspiracy and possession with intent to distribute methamphetamine, while Rivera-Fuentes's case involved importation of and possession with intent to distribute marijuana. Macias did not have

---

[21] *Id.*

[22] *Id.* (quoting *Infante*, 404 F.3d at 393).

[23] *Id.*

[24] *Id.* (quoting *United States v. Martinez*, 151 F.3d 384, 393 (5th Cir. 1998)).

confidential information helpful to one client but harmful to another. Macias's representations of the two clients were separated by a significant length of time—more than a decade—and Macias's prior representation of Rivera-Fuentes was terminated when Rivera-Fuentes was convicted and sentenced, with there being no evidence to indicate that Macias maintained any relationship with Rivera-Fuentes after that time. Additionally, while cross-examination of a prior client is not itself grounds for finding an actual conflict,[25] Macias demonstrated "an abundance of caution,"[26] refusing to cross-examine his prior client and, instead, employing unaffected co-counsel to conduct that specific cross-examination.

Furthermore, Miranda puts forward no plausible defense strategy that was avoided because of the alleged conflict. Miranda argues only that "Rivera-Fuentes's testimony against [him] constituted a major part of the Government's case-in-chief" and that Macias's lack of participation gave Rivera-Fuentes "a free pass to testify." Miranda argues that the addition of co-counsel for this purpose "hurt Miranda's defense" because Macias "sat himself out of the most important part of the Government's case." While the focus of Miranda's complaint is on Macias's decision to allow allegedly less experienced co-counsel to cross-examine Rivera-Fuentes, Miranda does not raise a claim of ineffective assistance of counsel and does not identify any questions, follow-up questions, or topics of inquiry which were avoided. Miranda further fails to identify any defensive strategy that was not pursued due to Macias's prior representation of Rivera-Fuentes or because co-counsel Yanez, rather than Macias, cross-examined Rivera-Fuentes. Miranda does not provide any support for his assertion that Macias is a more

_____

[25] *See id.* at 856 (citing *Perillo v. Johnson*, 205 F.3d 775, 801-02 (5th Cir. 2000)).

[26] *United States v. Preston*, 659 F. App'x 169, 179 (5th Cir. 2016) (unpublished) (citing *Burns*, 526 F.3d at 857).

experienced trial attorney or that having Yanez cross-examine Rivera-Fuentes hurt his defense. Miranda ultimately fails to identify anything in the record indicating Macias had Rivera-Fuentes's interest in mind during Miranda's trial.

Because "[i]t must be demonstrated that the [affected] attorney made a choice between possible alternative courses of action" and "[i]f he did not make such a choice, the conflict remain[s] hypothetical,"[27] Miranda's argument that there was an actual, as opposed to merely a potential, conflict of interest falls short. Consequently, the district court was not required to conduct a full-fledged *Garcia* hearing.

\* \* \*

The judgment of the district court is AFFIRMED.

---

[27] *United States v. Garcia-Jasso*, 472 F.3d 239, 243 (5th Cir. 2006) (quoting *Stevenson v. Newsome*, 774 F.2d 1558, 1561-62 (11th Cir. 1985)).