# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 15-50321

UNITED STATES OF AMERICA,

United States Court of Appeals
Fifth Circuit

**FILED**
June 22, 2016

Lyle W. Cayce
Clerk

Plaintiff - Appellee

v.

KEVIN DWAYNE BROWN, also known as Kevin Dwayne Brown, Sr., also known as Kevin D. Brown, also known as Dwayne Brown, also known as Kevin Brown,

Defendant - Appellant

Appeal from the United States District Court
for the Western District of Texas

Before HIGGINBOTHAM, PRADO, and GRAVES, Circuit Judges.

JAMES E. GRAVES, JR., Circuit Judge:

Kevin D. Brown appeals the district court's order sentencing him to ten years of supervised release following his conviction for failure to register as a sex offender under 18 U.S.C. § 2250(a). Because Brown did not meet the plain-error standard, we AFFIRM.

## FACTS AND PROCEDURAL BACKGROUND

In 1991, Kevin D. Brown was convicted of lewd and lascivious acts with a child under the age of fourteen after he pleaded guilty to sexually assaulting a six-year-old, autistic girl on a bus. Brown was sentenced to probation and required to register as a sex offender for life, including within thirty days of

## No. 15-50321

moving to a new city or county and within ten days of changing his residence within the same city or county. Brown relocated to Indiana following his conviction and registered as a sex offender. Indiana authorities notified Brown that he was still subject to the lifetime registration requirement and that he must notify Indiana if he moved to a new state.

In 2011,[1] Brown moved to San Antonio, Texas. He remained in San Antonio for two years before relocating to Lumberton, North Carolina. Brown then returned to San Antonio in March 2014 before moving back to Indiana in May 2014. In August of 2014, Brown made his final move to San Antonio and lived there until his arrest. Brown failed to register or notify the authorities of any of these moves.

Upon resettling in San Antonio, Brown applied for Social Security benefits. His application alerted the United States Marshals Service that he had relocated to Texas, and Marshals were dispatched to Brown's address in San Antonio, which was a Days Inn hotel. A front desk attendant identified Brown as a guest at the hotel from a photo provided by the Marshals. Brown was subsequently apprehended and voluntarily submitted to an interview with the Marshals. Brown admitted to not registering after moving to San Antonio, but claimed that he failed to do so because he was being threatened and assaulted by people who discovered he was a sex offender.

Brown was indicted with and pleaded guilty to one count of failing to register as a sex offender in violation of 18 U.S.C. § 2250(a). The Pre-Sentencing Report (PSR) assigned a base offense level of 16 according to U.S.S.G. § 2A3.5, which after a three-level reduction for acceptance of

---

[1] There is a dispute over when Brown first relocated to San Antonio. Brown's wife claims that she and Brown moved to San Antonio in April of 2010 while Brown stated it was April of 2011. Brown's timeline, however, seems to be correct because he registered as a sex offender in Indiana in April 2011.

responsibility resulted in a total offense level of 13. Following a review of Brown's extensive criminal history,[2] the PSR assigned a criminal history score of four and a criminal history category of III.   Neither Brown nor the government objected to the PSR.

The district court accepted the PSR's recommendations and acknowledged that Brown most likely failed to register because he was being threatened and assaulted.  The district court, however, remained concerned that Brown did not have a permanent residence in San Antonio and, after acknowledging review of the 18 U.S.C. § 3553(a) factors, sentenced Brown to fifteen months of imprisonment and ten years of supervised release.  Brown timely appealed the ten-year term of supervised release.

## DISCUSSION

Because Brown failed to object to the term of supervised release before the district court, we review for plain error.  *United States v. Hernandez*, 690 F.3d 613, 620 (5th Cir. 2012).  We reverse for plain error if four conditions are met: 1) "there must be an error or defect—some sort of deviation from a legal rule—that has not been intentionally relinquished or abandoned;" 2) "the legal error must be clear or obvious, rather than subject to reasonable dispute;" 3) "the error must have affected the appellant's substantial rights;" and 4) if these elements are satisfied, then the court "has the discretion to remedy the error— discretion which ought to be exercised only if the error seriously affects the

---

[2] Aside from the sex offense, Brown has pleaded guilty to offenses on ten occasions: 1) being in a city park after curfew, 2) consuming an alcoholic beverage in a city park and being in a city park after curfew, 3) inflicting corporal injury to a spouse, 4) battery and assault with a deadly weapon, 5) possession of marijuana and driving while under the influence, 6) residential entry and theft, 7) public intoxication, 8) driving under the influence, 9) failure to return to a lawful detention center, and 10) domestic battery and a parole violation.  Brown also had two charges which were either dismissed, or to which he pled nolo contendere and had two arrests that resulted in no charges.

No. 15-50321

fairness, integrity or public reputation of judicial proceedings." *United States v. Escalante-Reyes*, 689 F.3d 415, 419 (5th Cir. 2012) (en banc).

## I.

The government concedes the first two prongs of the plain error analysis—that the district court erred in sentencing Brown to a ten-year term of supervised release and that the error was obvious. Therefore, we only review whether that error affected Brown's substantial rights and, if so, whether we should exercise our discretion to correct the error.

## A.

To show that an error affects a defendant's substantial rights, the defendant is "ordinarily require[d] . . . to show that the error 'affected the outcome of the district court proceedings.'" *United States v. Mudekunye*, 646 F.3d 281, 289 (5th Cir. 2011) (quoting *United States v. John*, 597 F.3d 263, 284 (5th Cir. 2010)).  This can be done by demonstrating "a reasonable probability that, but for the district court's misapplication of the Guidelines, he would have received a lesser sentence." *Id.* (citing *United States v. Blocker*, 612 F.3d 413, 416-17 (5th Cir. 2010).  "[A] defendant has shown a reasonable probability that he would have received a lesser sentence when (1) the district court mistakenly calculated the wrong Guidelines range, (2) the incorrect range is significantly higher than the true Guidelines range, and (3) the defendant is sentenced within the incorrect range." *Id.* (citing *John*, 597 F.3d at 284-85).  All three of these elements are met in this case.

The government concedes that the district court mistakenly calculated the Guidelines range.  The PSR relied on the Sentencing Guidelines and 18 U.S.C. § 3583(k) when calculating Brown's term of supervised release.  The Guidelines instruct that those convicted of a Class C felony, such as a conviction for failure to register according to 18 U.S.C. § 2250(a), receive a term of supervised release of between one and three years.  U.S.S.G. § 5D1.2(a)(2).

In contrast, 18 U.S.C. § 3583(k) provides that the term of supervised release resulting from a conviction for failure to register as a sex offender is five years to life.  The PSR resolved this conflict by citing to U.S.S.G. § 5D1.2(c), which states that no term of supervised release may be less than the statutory minimum, and determined that the proper range for Brown's supervised release was five years to life.  But in doing so, the PSR failed to consider Guidelines Amendment 786.

Amendment 786 clarifies that when the statutory range of supervised release is above the maximum of the recommended term of supervised release in § 5D1.2, then a single point of supervised release exists at the bottom of the statutory range.  U.S. Sentencing Guidelines Manual, Supp. to App'x C, Amend. 786, at 80-82 (U.S. Sentencing Comm'n 2015).  Since this amendment, we have held that the correct term of supervised release for failure to register under 18 U.S.C. § 2250(a) is a single point of five years.  *United States v. Putnam*, 806 F.3d 853, 855 (5th Cir. 2015) (per curiam); *United States v. Segura*, 747 F.3d 323, 330 (5th Cir. 2014).  Because the district court calculated an incorrect Guidelines range for supervised release, we move to the second step.

For the sentence to affect Brown's substantial rights it must also be shown that the sentence is significantly higher than the true Guidelines range. Here, the correct Guidelines range was a single point of five years and Brown received a ten-year term.  We have consistently held that any sentence above the Guidelines range satisfies the significantly higher step for the substantial interest prong of the plain error analysis.  *See, e.g., United States v. Hernandez*, 690 F.3d 613, 621 (5th Cir. 2012) (holding that a sentence "12 months higher than the top-end of the correct Guidelines range" affected the defendant's substantial rights); *John,* 597 F.3d at 263 (determining that a disparity of twenty one months affected the defendant's substantial rights); *United States*

No. 15-50321

*v. Garza-Lopez*, 410 F.3d 268, 275 (5th Cir. 2005) (concluding that a sentence of seventy-seven months affected substantial rights when correct range was thirty-three to forty-one months).  A recent opinion reviewing an incorrect term of supervised release for a failure to register offense is also informative.  In *United States v. Putnam*, the defendant was convicted of failure to register as a sex offender under 18 U.S.C. § 2250(a).   806 F.3d at 854.   The PSR recommended a term of supervised release of five years to life, which the district court adopted, sentencing the defendant to fifteen years of supervised release.  *Id.* at 855-55.  We concluded that the fifteen-year term of supervised release, which fell within "the erroneous 'five years to life' range," affected the defendant's substantial rights because it was outside the correct Guidelines range. *Id.* at 855-56.   Given our broad application of the second step of the substantial rights analysis, other cases finding a substantial disparity with incorrect sentences closer to the correct Guidelines range than Brown's, and the recent decision in *Putnam* under similar circumstances, we conclude that Brown's sentence is significantly higher than the correct Guidelines range.

Finally, it must be shown that Brown was sentenced within the incorrect range.  Once again, the government's concession that there was plain error and that Brown was sentenced above the correct, single five-year point of supervised release fulfills this step of the analysis.  Thus, the sentence affects Brown's substantial rights unless there is evidence in the record that the district court intended to impose an above-Guidelines term of supervised release. *Mudekunye*, 646 F.3d at 290.

It is not apparent from the record that Brown would have received an above-Guidelines sentence if the district court had calculated the correct Guidelines range.  Rather, the record shows that the district court intended leniency during sentencing.   For example, the district court asked the government "what interest is served" by sentencing Brown to a term of

6

No. 15-50321

imprisonment above the minimum of the Guidelines range. And the district court stated that, although it believed Brown's testimony that he only failed to register because people were threatening and assaulting him, it was not comfortable sentencing Brown to time served because he was homeless at that time, which impaired his ability to register. The district court then sentenced Brown to a below-Guidelines term of imprisonment. Therefore, the record demonstrates that the district court most likely intended leniency when sentencing Brown, imposing a term of supervised release on the low end of the incorrect Guidelines range.

The government nevertheless contends, relying on *United States v. Segura*, that the imposed term of supervised release does not affect Brown's substantial rights because the district court sentenced him after engaging in an independent assessment of § 3553(a) factors. In *Segura*, we concluded that a life term of supervised release for failure to register as a sex offender did not affect the defendant's substantial rights because "[t]he district court's decision was based upon an assessment—independent of the PSR's erroneous recommendation—that [the defendant] required lifetime supervision." 747 F.3d at 331. But we did so because of the district court's concern that the defendant would not assimilate back into society or find employment. *See id.* at 330-31. In other words, the district court's concern for recidivism served as an independent basis for the life term of supervised release. That is different from this case, where the district court rejected Brown's request for a term of imprisonment equal to time served because his family was not yet settled into a permanent home in San Antonio. We therefore conclude that the imposed term of supervised release affects Brown's substantial rights.

## B.

Concluding that an error affects a defendant's substantial rights, however, is not the end of the analysis; we also must decide whether to exercise

our discretion to correct the error.  We exercise discretion if "the error affects 'the fairness, integrity, or public reputation of judicial proceedings.'" *Escalante-Reyes*, 689 F.3d at 425 (quoting *Puckett v. United States*, 556 U.S. 129, 135 (2009)).  Such an exercise is not automatic.  *Id.*; s*ee also United States v. Ellis*, 564 F.3d 370, 378 (5th Cir. 2009) ("Not every error that increases a sentence need be corrected by a call upon the plain error doctrine.").  Rather, we exercise our discretion "on a case-specific and fact-intensive basis."  *John*, 597 F.3d at 286 (internal quotation and citation omitted).

Our precedent cautions against exercising our discretion to correct the error made during Brown's sentencing.  For example, in *Segura*, we stated that we would not have exercised discretion to correct the error because the defendant's extensive criminal history did not call the fairness of a life term of supervised release into question.  747 F.3d at 331.  Brown has an extensive criminal history, which includes offenses that violated conditions of his probation.  We have consistently held that it is not necessary to correct an error if there is sufficient evidence in the record showing that the incorrect sentence was nevertheless fair.  *Escalante-Reyes*, 689 F.3d at 425; *Segura*, 747 F.3d at 331.  Here, the district court expressed its concern with the defendant's "temporary living arrangements" and that his life was not "squared away."  The district court also stated that, upon release, the defendant had to find a "residence approved by your probation officer."  Moreover, the defendant, after asking for a below-Guidelines term of imprisonment, requested that the judge impose "supervision for as much as you want."  Based on these facts, we conclude that the term of supervised release is fair and does not call into question the integrity of judicial proceedings.

## CONCLUSION

Reversing a district court for plain error should be "rare."  *Escalante-Reyes*, 689 F.3d at 426 (Smith, J. dissenting). We decline to exercise our

No. 15-50321

discretion to correct the error because, on these facts, it does not affect the fairness, integrity, or reputation of judicial proceedings.

The order sentencing Brown to ten years of supervised release is AFFIRMED.